Parker
v.
Walrod.

PARKER *vs.* WALROD.

Where a party in possession of the waggon of another takes off part of its appendages, and substitutes others belonging to himself, and the owner *repossesses* himself of the waggon without knowledge of the change, *trespass* cannot be maintained against him for the substituted articles; the only action, if any, which lies against him is *trover* after demand and refusal.

The cases in the books which hold that in a suit *against an officer* for taking property by virtue of legal process, brought by a *stranger to the process*, the officer is bound to produce the judgment, or the proceedings in the nature of a judgment, upon which the process issued, as well as the process itself, reviewed and commented upon; and the rule laid down that the officer is not bound to go beyond the process, unless the plaintiff in such suit *shows such title in himself* to the property as would be effective against the defendant in the execution or process.

But *it was held*, in this case, that a *ministerial officer* who executes the process of an officer or court having jurisdiction of the subject matter, and the power to issue the process, is *protected* in the execution thereof, if the process be regular on its face and apparently within the jurisdiction of the officer or court issuing the same.

If, however, the want of jurisdiction appears upon the face of the process, the officer is not protected; and so, *it seems*, he would not be held protected where the want of jurisdiction arises from a fact of public notoriety which could legally be presumed to be within his knowledge.

ERROR from the supreme court. Parker sued Walrod in a justice's court, and declared against him in *trespass*, for entering his close and taking and carrying away the *clevices* and *whiffletrees* affixed to a waggon. The defendant pleaded the *general issue*, and gave notice that he would prove on the trial that the plaintiff had wrongfully substituted the clevices and whiffletrees in question for clevices and whiffletrees which were affixed to a waggon to which he, the defendant, had the right of possession. It appeared on the trial that the defendant, as a constable, by virtue of attachments issued from a justice's court, had levied on a waggon with clevices and whiffletrees affixed to it as property of one *Godfrey*, the defendant in the attachments; that the property at the time of the levy was in the possession of Parker, and taken away by Walrod; that *Godfrey* had been in possession of it, and used it as his own, and so continued to use it until he ran away shortly previous to

the commencement of this suit. That after the levy, the plaintiff repossessed himself of the property; and while in his possession, his servant took off the clevices and whiffle-trees which were affixed to the waggon when Walrod made the levy, and affixed to it other clevices and whiffletrees belonging to Parker: after which, Walrod repossessed himself of the waggon, with the clevices and whiffletrees of Parker thus affixed, and for this taking the suit was brought. Parker made a *general objection* to the introduction of the *attachments* in evidence which was overruled by the justice. No evidence was given of any title in the plaintiff to the property formerly possessed by Godfrey, derived from Godfrey or otherwise. The cause was tried by a jury, who found a verdict for the defendant, upon which the justice rendered judgment for costs *against the plaintiff*, who sued out a *certiorari*, removing the proceedings into the Onondaga common pleas, where the judgment of the justice was *reversed*. The defendant thereupon sued out a *writ of error* removing the record into the supreme court, *where the judgment of the common pleas was reversed*. See opinion delivered in the supreme court, 13 Wendell, 298. The plaintiff brought the case into this court by writ of error, where it was submitted on written arguments.

After advisement, the following opinion was delivered:

By the CHANCELLOR. The defendant being sued as a constable for an act done by virtue of his office, had the right, under the general issue, to give any matter in evidence which was a defence to the suit. 2 R. S. 353, § 15. As he was sued for entering the plaintiff's *close* as well as for taking the whiffletree and clevices, it was proper to give the attachments in evidence as a justification for the entering of the close to take the property of the person against whom the attachments had issued, even if he was liable for taking the property of the plaintiff which had been attached to the waggon in the manner stated by the witness. I have no doubt, however, that the supreme court was right in holding that if the plaintiff or his servant had exchanged the

ALBANY,
Dec. 1836.

Parker
v.
Walrod.

whiffletrees and clevices, and affixed his own to the waggon without the knowledge or consent of the constable, an action of *trespass* would not lie against the latter for taking them away with the waggon, unless he was aware of the fact that they had been thus changed, provided he was justifiable in taking the waggon itself. From the evidence before the justice, there can be no doubt that the constable acted in good faith, believing that the whiffletrees and clevices were the same which he had originally attached with the waggon as the property of Godfrey. It was the plaintiff's own fault, therefore, that this mistake occurred; and if any action could be sustained against the constable without returning to him the whiffletrees and clevices which actually belonged to the waggon, of which I have some doubt under the circumstances of this case, it must have been an action of *trover* for refusing to return the property to the plaintiff, after the constable was informed of the mistake which had occurred. The defence of the constable, therefore, depended mainly upon the question whether he was justified in taking the waggon itself under the attachment as the property of Godfrey.

The evidence before the justice was sufficient, *prima facie*, to prove that the waggon and harness were the property of Godfrey, as he was in possession thereof, claiming to be the owner, before he ran away. This prior occupancy was sufficient evidence of property in Godfrey to cast upon Parker the burden of proving a previous right in himself, or a subsequent title to the property derived from such prior occupant; and as no such proof was given or offered before the justice, the defence of the constable was complete if he had attachments against Godfrey which authorized the taking of his property. The giving of those attachments in evidence was therefore not only pertinent to the issue between these parties, but an essential point in the defence of the constable.

As the attachments were regular on their face, and the justice had general jurisdiction over the subject matter of the suits in which they were issued, the burden of proof lay upon Parker to show that the requisites of the statute

had not been complied with, even if the plaintiff's counsel is right in supposing that the constable could not protect himself under process of a court of competent jurisdiction, apparently regular, and where he had not the means of knowing that the court had exceeded its jurisdiction in the manner of issuing such process. The only exception to this rule, of which I am aware, is the case of an officer justifying under an execution for the taking of goods claimed by a *stranger;* but even in that case, the decision in *High* v. *Wilson,* 2 Johns. R. 46, and in the several cases in the English courts which preceded it, went no further than to require the production of the judgment *in a suit with a stranger who showed in himself a title to the property,* which was good as against the defendant in the execution. In *Lake* v. *Billers,* 1 Ld. Raymond, 733, *Martin* v. *Podger,* 5 Burr. R. 2631, *Ackworth* v. *Kemp,* 1 Doug. R. 41, and in the case of *High* v. *Wilson,* before referred to, the plaintiffs showed title in themselves, derived from the defendant in the execution *before* the lien of the execution attached thereon. The execution of itself, therefore, was no defence to the officer, who could only make it available against a stranger to it, by connecting it with a judgment, and then showing that the transfer of the property to the person thus claiming it was fraudulent and void as against the creditor who had recovered such judgment. In this view of the subject, it will be seen that the cases referred to may be sustained upon principle, as the production of the judgment record was necessary to establish the fact that the execution issued upon a judgment rendered for a cause of action which existed, or for a debt contracted, before the issuing of such execution, otherwise there would have been no creditor as against whom the transfer of the property could have been fraudulent; but there are many cases in which it has been held that where the officer has levied upon property in the possession of the defendant in the execution, and it has been subsequently taken from him by a stranger, he may sustain an action against such stranger upon his title and possession *under the execution alone,* without producing the judgment to show that the execution had regularly issued. If there is any case in which it has been

held that a production of the judgment was necessary to protect the officer against a mere intermeddler, who had no claim to the property or to the possession thereof even as against the defendant in the execution, the court must have erred in following the decision in *Lake* v. *Billers*, and the other cases of that class, to which I have before referred, while the principle upon which those decisions were based has been entirely overlook or misunderstood by the court.

Having disposed of this class of cases, which have been supposed by many to be anomalous in their character, and to form an exception to a general rule, I am prepared to go with Mr. Justice Marcy, in his opinion, in the case of *Savacool* v. *Boughton*, 5 Wendell, 170, in declaring the settled rule of the common law, at least in this state, to be, that a mere ministerial officer who executes the process of a court having jurisdiction of the subject matter, and having also jurisdiction to issue such process in general, or in certain specified cases, is protected in the execution of such process if it is regular on its face, and apparently within the jurisdiction of the court issuing the same. The several cases on this subject have been so fully and ably examined by that learned judge, in the elaborate opinion to which I have referred, that it would be a useless waste of time for me to attempt to go over the same ground. Suffice it to say that the cases to which he has referred, with one or two exceptions, fully sustain the conclusions at which he arrived on this subject. Even the cases of *Suydam & Wickoff* v. *Keys*, 13 Johns. R. 444, and *Wise* v. *Withers*, 3 Cranch, 331, which are supposed by Justice Marcy to conflict with this general rule, may perhaps be considered as only forming a reasonable exception to it, and as not coming within the just and equitable principle which protects a ministerial officer in the execution of process which he is bound to presume to have been legally and properly issued. It is admitted to be the law that the process of a court of inferior jurisdiction will not protect the officer, if the want of jurisdiction to issue the same appears upon the face of the process; and I apprehend also the same principle may be ap-

plied to a case where the want of jurisdiction arises from a

fact of public notoriety which is legally presumed to be within
the knowledge of the officer as well as others and of which
he is, therefore, bound to take notice.   If the decisions in the
cases of *Suydam & Wickoff* v. *Keys*, and *Wise* v. *Withers*,
can be supported at all, it must be upon this principle; al-
though in neither of those cases does the court appear to have
put its decision upon the ground, that the officer was bound
to take notice of the fact that the persons who had been
assessed, were not residents of his school district, or that the
party upon whom the militia fine had been imposed was a
judicial officer of the United States, and, therefore, not amen-
able to a court martial for the non-performance of militia
duty.   It is not necessary, however, that I should express an
opinion upon the question whether these were matters of
such public notoriety, in the district where the officer resided,
and where the process was to be executed, as to make it the
duty of the officer at his peril, to take notice of the fact that
the process was illegal, and issued without authority.

In the case under consideration, the attachments were
regular upon their face, and were issued by a court having
jurisdiction of the subject matter of the suits, and having
also authority to issue such process, upon a compliance
with the statutory regulations on that subject; and there
was no fact within the knowledge of the constable, from
which he could have supposed that there was any irregu-
larity in the issuing of the attachments.   They were, there-
fore, a sufficient authority to him to enter upon the pre-
mises of the plaintiff in error, to take the waggon of God-
frey, the defendant in the attachments.   Having the au-
thority to enter and take the waggon, as I have before ob-
served the constable was not liable to an action of trespass,
either for entering upon the close of Parker, or for taking
the whiffletree and clevices which had been attached to the
waggon without his knowledge or consent.   There was,
therefore, no error in the judgment of the justice; and the
decision of the supreme court, affirming the same, and re-
versing the erroneous judgment of the court of common

pleas, should be affirmed by this court, with such costs as the statute gives to public officers in cases of this kind.

On the question being put, *Shall this judgment be reversed?* all the members of the court present (twenty in number) voted in the negative.

Whereupon the judgment of the supreme court was AF-FIRMED.