## SHEPHERD, ET AL. v. NABORS.

1. Where a sheriff justifies the seizure of property under a writ of *fieri facias*, he need not allege that a judgment was rendered in the case in which the execution issued ; the production of the judgment may become necessary, where the plaintiff proves that his title is paramount to the lien of the execution.
2. A father, by deed, gave to the heirs born of his daughter's body, a female slave, providing therein that he should retain the slave in his possession during his life, and at his decease that she should be " in full possession of the heirs born" of his daughter : *Held*, that this was a testamentary paper and might be proved as such ; and that *all the children to which the daughter gave birth*, might claim an equal interest in the slave and her increase, under the deed as an executory devise.
3. In the absence of proof showing the contrary, the English common law, when consistent with our institutions, will be presumed to be the rule of decision in a sister State.
4. A legatee of personal property cannot maintain an action for the recovery of his legacy, unless the will has been regularly admitted to probate.
5. Where it appears from a bill of exceptions that the plaintiff failed to make out his case, an appellate court will not, at his instance, reverse a judgment rendered against him, because the court expressed to the jury an incorrect opinion upon the law, or gave an erroneous reason for a correct conclusion.

Writ of error to the Circuit Court of Pickens.

This was an action of trover by the plaintiffs in error, against the defendant, to recover damages for the conversion of a female slave named Silvey. The defendant pleaded, 1. Not guilty.— 2. That he was sheriff of Pickens county, and as such, received two writs of *fieri facias*, (which are set out *in extenso*) with the indorsements and returns thereon; these executions are against the goods and chattels, &c. of John Shepherd. From the returns, it appears that they were levied on the third of August, 1841, on a negro woman named Silvey, who was sold on the first Monday in September thereafter, to the highest bidder, for three hundred and eighty-six dollars; and that James Richey became the purchaser. The plea then alleges that Silvey was levied on and sold at the time stated, according to law, as the property of the defendant in the executions; "that these actings and doings are the same with which he is charged in the plaintiff's declaration, and no other;" that Silvey was the property of John Shepherd,

and was then and there liable to satisfy the writs of *fieri facias* set out; and negatives the fact that she was at any time the property of the plaintiffs, &c. To this plea, the plaintiffs demurred, and their demurrer being overruled, they replied; whereupon an issue was made up on both pleas, and the cause submitted to a jury.

On the trial the plaintiffs excepted to the ruling of the court.— It is shown by the bill of exceptions, that the plaintiffs read to the jury an instrument of writing, of which the following is a copy, viz: Know all men by these presents, that I, Robert Moses, of the county of Franklin, and State of Tennessee, have this day, given to the heirs born of my daughter, Winney Shepherd's body, a certain negro girl, named Silvey, about sixteen years old, black complexion, which negro, I, the said Moses, do warrant and forever defend the right of the said negro from my heirs, and from every other person or person, to the said lawful heirs, born of Winney Shepherd's body. Nevertheless, I, the said Robert Moses, doth keep the said negro in my possession my lifetime, and at my decease, the negro is in full possession of the heirs born of Winney Shepherd's body. Witness whereof, I have set my hand and seal, this 8th day of August, 1812.

ROBERT MOSES, [Seal.]

It was proved that Winney Shepherd was living at the date of the instrument, that the plaintiffs were her children; some three or four of them were then born, and the others since that time. Mrs Shepherd survived her father, and some of the plaintiffs were born after his death. The defendant proved, that as sheriff, he levied on the slave in question, under an execution against John Shepherd, the father of the plaintiffs. There was a conflict in the proof, whether the possession of Silvey had been with the plaintiffs or their father, since the death of Robert Moses. The court, among other things, charged the jury, "that the instrument read in evidence, was not of any validity as paper title to the slave in controversy, in favor of the plaintiffs; because—first, under a rule of law, Winney Shepherd had no *heirs* at the time the same was made—and secondly, if the word heirs was to be understood children, it was uncertain, from the face of the instrument, what children were meant; whether such only as were born when it was made, or such also, as should afterwards be

born." The jury returned a verdict for the defendant, and there-upon a judgment was rendered.

J. J. PORTER, for the plaintiffs in error.—The plea of justification does not allege that there were judgments in the cases in which th *fi. fa's* issued. [5 Burr. Rep. 2631; 2 W Bla. Rep. 701; 1 Ld. Raym. Rep. 305, 733; 2 Saund. Plead. and Ev. 793; 2 Johns. Rep. 46; 4 Mass. Rep. 232; Gould's Plead. 49, § 2.]—These citations will show that the plea is bad for the defect stated.

The reasons assigned by the circuit judge for determining that the instrument offered in evidence by the plaintiffs, is void, cannot be supported. By the term "heirs," we are to understand children, and not only those born at the time of the gift, or at the donor's death, but all to whom Mrs. Sheppard was to give birth during her life.

The writing in question must be regarded as an executory devise, which may or may not become vested in the objects of the devisor's bounty, immediately upon his death. [2 Bla. Com. 172.] Here the writing, although in form a deed, is in point of law a will. [2 Ala. Rep. 155; Lovelass on Wills, 317; 2 Caro. L. Repo. 595; 2 Nott & McC. Rep. 531; 4 Dess. Rep. 617; 6 Ves. jr. Rep. 385.] The fact, whether Mrs. Shepherd would have children, or when the youngest would be born, were events altogether uncertain, and determine the character of the bequest to be contingent. [2 Ala. Rep. 156; Lovelass on Wills, 325; 1 Russell's Rep. 266; 12 Mass. Rep. 424; 3 Dess. Rep. 550; 5 H. & Johns. Rep. 10; 1 Ves. & B. Rep. 422.]

An executory devise operates in favor of the ulterior devisee, although he be not *in esse* at the time it is made, or at the death of the devisor. [Fearne on Rem. 9—536; Lovelass on Wills, 325; 4 Kent's Com. 269, 284; 1 Eq. Cases Ab. 191; pl. 2; 2 Bla. Com. 172.] This being the case, all the children of Mrs. Shepherd are jointly entitled to the slave Silvey, and the action is well brought.

The counsel also made other points, which the view taken by the court, makes it unnecessary to notice particularly; and cited the following authorities. [Greenl. on Ev. 286-8-9, 325, note 3, ii. iii. iv.; Wigram on Wills, 11, 14; 5 M. & W. Rep. 363; Lovelass on Wills, 275; 3 Hals. Rep. 97; Greenl. Ev. 295, 298; Matthews on Pres. Ev. 44; 2 Stark Ev. 566; Ram. on Wills 49; 8

Porters' Rep. 203; 1 P. Wms. Rep. 233; 1 Brown's P. Cases, 288; 3 East's Rep. 533; 2 Atk. Rep. 582; 7 Taunt. Rep. 362; 2 Dess. Rep. 18–33; Matthews on P. Ev. 45; 12 Wend. Rep. 83; 4 Johns. Rep. 61; Fearne on Rem. 313–4; 1 Vern. Rep. 66; 2 Ves. Sr. Rep. 640; 1 id. 57, 226; 5 id. 849; 6 Munf. Rep. 352; 3 Wend. Rep. 503.]

In answer to an intimation from the court, that the testamentary paper relied on should have been proved as a will, and that for the want of a probate, it could not be used in this action, to entitle the plaintiffs to recover; the plaintiff's counsel cited, 2 Caro L. Repo. 595; 3 Johns. Ca. 283, 5 Cow. Rep. 221.

HUNTINGTON, for the defendant.—If the second plea amounts to the general issue, this is an objection which is available only upon special demurrer. [7 T. Rep. 391; 10 Johns. Rep. 289; 2 Stew't & P. Rep. 402.] In this State, special demurrers are abolished by statute.

But if a special demurrer was allowable, still the plea would be good. [2 Leigh's N. P. 1493–4.] Nor was it necessary to defendant's defence, that he should have alleged there was a judgment, or that the *fi. fa.* was regularly issued. [5 Wend. Rep. 170; 16 id. 514.] The case of Burns v. Taylor, [3 Porter's Rep. 187,] does not lay down a contrary rule.

The writing given in evidence, was a covenant to stand possessed to the use of the donor for life, and after his death, the slave in question should go to the children of Winney Shepherd, born at the date of the deed, and living at the donor's death; or such as might be living at the latter period, without reference to the time of their birth; or else to such children as Mrs. Shepherd might give birth to during her life. In either case the deed is void, for the uncertainty and the ambiguity, cannot be explained.— [Greenl. Ev. 340, et post.]

Again; upon the last interpretation supposed, the deed would be void, because there would be a use limited upon a use, in respect to children born after the donor's death. [9 Cow. Rep. 437.] And upon the first and second interpretations of the instrument, there are too many plaintiffs, and for that reason, if no other, the action could not be supported. [12 East's Rep. 516.] If all other objections fail, it is insisted that the deed is void, because it is made to the heirs of a person then living.

COLLIER, C. J.—In Savacool v. Boughton, [5 Wend. Rep. 170,] it was declared to be a settled rule of the common law, that a mere ministerial officer, who executes the process of the court having jurisdiction of the matter, and authorised to issue such process in general, or in certain specified cases, is protected in the execution of such process, if it is regular on its face, and apparently within the jurisdiction of the court issuing it. This case was reviewed by the court of errors, in Parker v. Walrod, [16 Wend. Rep. 514,] and is regarded as a most satisfactory exposition of the law. It is there admitted, that if the want of jurisdiction appear upon the face of the process itself, the officer to whom it is delivered, is bound to take notice of it, and can claim no protection from such process when sued for an act done in executing its mandate. *Further*, the court say that where the plaintiff shows title in himself, derived from the defendant in execution before its lien attached thereon, the execution will not afford a defence to the officer, but to make it available against a stranger, he must connect it with a judgment, and then show that the transfer of the property to the person thus claiming it, was fraudulent and void, as against the creditor who had recovered such judgment. This is stated as the only exception to the rule laid down in 5th Wendell. The cases cited by the plaintiff's counsel, are noticed by the court, and instead of contradicting what is supposed to be the general rule, only determine, that where the plaintiffs shows a title derived from the defendant before the lien of the execution, in order to its invalidity, the plaintiff must produce the judgment.

Whether a case come within the rule, or what has been called the exception to it, is wholly immaterial as it respects the frame of the plea; in neither case is it necessary to allege that the *fi. fa.* was issued pursuant to a valid judgment. The execution, as we have seen, if unobjectionable in itself, will justify the officer in obeying it, and the judgment, when its production is necessary, is only evidence in connection with extrinsic proof, to show that the creditor's right to sell the property was superior to the title which the plaintiff has made out. The judgment is not a primary element in the justification of the officer, and can only be made material by the proof adduced by the plaintiff; therefore, upon principle, the pleadings cannot be required to make any averment in respect to it.

In Dunn and Wife, et al. v. The Bank of Mobile, et al. [2 Ala. Rep. 152 ] we held, that although an instrument be in form a deed of gift, and so designated upon its face, still if its purpose be testamentary—is not to operate during life, but is not to be consummated until death, it may be proved as a will. So, an instrument, which is in form an indenture, and sealed and delivered as a deed, may, if testamentary in its nature, operate as a will even of real estate; and such paper would be a good execution of a power to appoint by will. [Lovelass on Wills, 317, and cases there cited.] The instrument in question, it is clear, is of the character described; for its operation is expressly postponed until after the donor's death. This being the necessary consequence from the law as stated, the case cited from 2 Ala. Reports, will show, that the gift to Mrs. Shepherd's children was an executory devise, and may take effect in favor, not only of those who were born at the time the instrument was executed, or at the donor's death, but all of whom Mrs. Shepherd may become the mother during her life. The intention of the donor requires that the deed should receive this extended interpretation; for all the children, no matter when born, were related to him in the same degree, and following the dictate of nature, should be alike cherished as objects of his bounty. Now, although *nemo heres est viventis* is a familiar maxim of the common law, it cannot be allowed that a deed or will shall be inoperative; because, in designating the persons who it is intended shall take under it, the term, "heirs," is used as a substitute for children or issue. The rule which requires the intention of the testator, donor or grantor to be carried into effect, where it is consistent with law, utterly forbids such a conclusion. It cannot be maintained that the deed is void because it is uncertain which of the children of Mrs. Shepherd are to take under it. The instrument being testamentary, operates as an executory devise, and that the "heirs" may enjoy the property, all the children must *take a joint* interest. The difficulty of adjusting the rights of the children will be no objection to this construction; for it would be competent, if necessary to a division, to sell the property: and in order to provide for after-born children, those who come into the possession of their interest, upon the death of Robert Moses, might be required to enter into bond with surety to contribute so as to make up the shares of the younger issue.

The instrument in question appears to have been executed in Tennessee, and from any thing to the contrary, shewn by the record, may have been consummated by the death of the donor while possessed of the slave in that State. We, therefore, propose to consider its legal effect in reference to the English common law, which, in the absence of proof showing it to be inapplicable, must, when consistent with our institutions, be understood to be the rule of decision in a sister State.

It has been said, that a will of real estate, *independently of the requirements of a statute,* does not need a formal probate to give to it efficacy in favor of a devisee; that it operates as a conveyance, *propria vigore,* and like an ancient deed, when possession has been consistent with it for a long time, will be presumed to have been executed in the manner it imports. [Ram. on Wills, 3—4; Bagwell v. Elliott, et ux. 2 Rand. Rep. 190; Fetherly v. Wagoner, 11 Wend. Rep. 519. · See, also, 3 Johns. Cases, 283; 5 Cow. Rep. 221; 7 id. 374; 6 Serg't & R. Rep. 223; 1 Har. & McH. Rep. 419; 10 Wheat. Rep. 470; 2 Rep. Const. Ct. of So. Caro. 80; 4 Dev. Rep. 430; 3 Phil. Ev., C. & H.'s notes, 861, 1347, 8.] But the question is not as to the necessity of a probate in order to establish a will of real estate at common law; it is whether the legatee of personal property can recover it at law until the will has been proved in the *forum* provided for that purpose. This question arose in Rex v. The Inh. of Netherseal, [4 T. Rep. 258,] and Lord Kenyon said, "we cannot receive any other evidence of their being a bill in this case than such as would be sufficient in all other cases, where titles are derived under a will; and nothing but the probate or letters of administration with the will annexed are legal evidence of the will in all cases of personalty." This was considered as a correct statement of the law in Armstrong v. Lear, [12 Wheat. Rep. 175,] where it was held, that an administrator appointed here, could not sue for a legacy bequeathed by a foreign will; because, probate of the will had not been made. [And the same doctrine is re-asserted in Tarver v. Tarver, 9 Peters' Rep. 174. See, also, Pinkerton v. Walker, 3 Hayw. Rep. 223: Howell v. Whitchurch, 4 Id. 49; Pinney v. Pinney, 2 Mann. & Ryl. Rep. 436; 8 Barn. & C. Rep. 335.]

It is needless to enlarge upon this point, for it is clear, upon the authorities cited, as well as upon principle, that the plaintiff's can

take nothing under the testamentary paper adduced by them, until it has been admitted to probate as a will. The reasons which induced a decision by the circuit court against the validity of the instrument, we have seen are not well founded in law, yet the result was correct; and the plaintiff's, not being prejudiced, cannot urge an erroneous reason for a correct decision as a ground for its reversal. The consequence is, that the judgment of the circuit court is affirmed.