## HALL *a.* STRYKER.

*Supreme Court, Second District; General Term,*          , 1858.

ATTACHMENT.—FRAUDULENT CONVEYANCE.—SHERIFF.

A person claiming to be a creditor with a warrant of attachment issued under the Code, but without a judgment or execution, cannot impeach and litigate the *bona fides* of a sale of goods by his alleged debtor to a third person, which has been consummated by transfer and delivery of the possession before any lien under the warrant attached.[*]

Appeal from a judgment.

---

[*] To the contrary effect is Thayer *a.* Willet, *Ante*, 325.

Hall *a.* Stryker.

The sheriff of the county of Kings, was sued in this action, for taking, on attachment against the plaintiff's vendor, goods which were in the plaintiff's possession, and claimed by her as her property. His defence was, that the bill of sale or transfer made by the defendant in the attachment to the plaintiff in this action was fraudulent and void as against creditors.

*S. P. Nash*, for the defendant. The language of the statute is: " Every conveyance, &c., made with intent to hinder, delay, or defraud creditors *or other persons* of their lawful *suits*, damages, forfeitures, debts, or demands, &c., *as against the persons so hindered, delayed, or defrauded, shall be void.*"

The original statute (13 *Eliz., c.* 5), ran thus: " Every feoffment, gift, grant, &c., had or made to delay, hinder, or defraud creditors or others of their just and lawful *actions, suits,* debts, accounts, damages, penalties, forfeitures, heriots, mortuaries, and reliefs, shall be from henceforth deemed and taken (only as against that person or persons, his or their heirs, executors, &c., whose *actions, suits,* debts, &c., by such guileful, covinous, or fraudulent devices and practices are in any wise *disturbed,* hindered, delayed, or defrauded), to be clearly and utterly void, frustrate, and of non-effect."

The substance of the two statutes is the same ; and were one relieved from the numerous dicta which have crept into the books on this subject, it would seem a simple proposition that any person who has a *lawful suit* against a defendant, which *lawful suit* may be rendered frustrate and nugatory by a fraudulent transfer of property by the defendant, is *a person who is hindered, delayed, or defrauded of his lawful suit.* Until the *lawful suit* furnishes some process or other remedy by which the property may be taken, or unless the creditor has some lien upon it, of course it cannot be said that the creditor is hindered or defrauded. Where the object of a suit, for instance, is simply to recover judgment at law on a debt, a fraudulent transfer of property is no obstacle to the recovery of the judgment. It is an obstacle to the collection of the *fieri facias,* and therefore when the plaintiff at law has issued a *fieri facias* he is hindered or obstructed by the fraudulent sale. So where an attachment at the commencement of a suit is *lawful process* by which plaintiff may seize and hold the defendant's property as

a security for the judgment he is suing to recover, a covinous transfer made by the debtor which prevents a levy, clearly hinders and delays the plaintiff's lawful suit, and he is therefore in a position to impeach the covinous transfer by which his suit is so frustrated.

In examining the decisions under this statute, it is necessary to discriminate carefully the case a creditor must make when he sues in chancery, from the case he must make when he sues at law.

The jurisdiction administered in chancery did not embrace all cases arising under this statute, and many of the requirements laid down in the cases were such as were necessary to give the plaintiff a right to sue in chancery.

At law, it has been held that a judgment-creditor may levy his execution upon the property alleged to be fraudulently conveyed, and in that way impeach the validity of the transfer. This is the ordinary case.

It has further been held that the assignee in insolvency (who is by law a trustee for creditors), may bring ejectment to recover land fraudulently aliened, the ground being that, as the statute makes the conveyance void, the fraudulent alienee has no title as against creditors or other persons whose rights would be frustrated by the conveyance. (Doe *ex d.* Grimsby *a.* Ball, 11 *M. & W.*, 531.)

So a creditor of a deceased person who had, before his death, made a fraudulent sale of his goods, could sue the fraudulent transferee upon his debt, as executor *de son tort.* (Edwards *a.* Harben, 2 *Term R.*, 587; Osborne *a.* Moss, 7 *Johns.*, 161.)

And now, since the statute has abolished the right to proceed against a wrongdoer as executor *de son tort*, and made the executor and administrator of a deceased person trustees for his creditors, it is held they may directly impeach fraudulent sales made by him in his lifetime, and even bring *trover* for personal property so fraudulently transferred. (Babcock *a.* Booth, 2 *Hill*, 181; McKnight *a.* Morgan, 2 *Barb. R.*, 171.)

That it was not necessary for a creditor who, at common law, sued the fraudulent transferee as executor *de son tort*, to have a judgment as evidence of his debt, appears from the cases. (Bethel *a.* Stanhope, *Cro. Eliz.*, 810; Edwards *a.* Harben, 2 *Term R.*, 585; Osborne *a.* Moss, 7 *Johns.*, 161.)

Another example of the manner in which the statute operated at common law, is furnished by the following case: One indebted by bond, before dying, made a fraudulent conveyance of his lands to his children, the purpose being to relieve such lands from the *quasi* lien of his specialty debts, to which they would be subject if the children took as heirs: " In this case the conveyance shall be void as to those whose remedy is upon the land by descent." (*Shepp. Touchst.*, 66 ; *Rob. on Fraud. Conv.*, 598 and 599.)

In Gooch's case (5 *R.*, 60), the question seems to have been raised, in a simple action at law brought by the bondholder against the heir, on the ancestor's bond—the plea was *riens par descent*, and the reply was that the defendant had assets. Under this issue the good faith of alienations in fraud of the bond-creditor's right was tried. (See *Roberts on Fraud. Conv.*, 602.)

Several other instances of the manner in which the statute operated at common law appear in *Roberts*, 590–610 ; from a careful examination of which I am satisfied that a creditor who has a right, by *lien, process,* or otherwise, to hold or seize his debtor's property, is in a position to hold or seize it, if it is in the possession of a fraudulent transferee, and contest the validity of such transfer.

The case of Frisbey *a.* Thayer (25 *Wend.*, 396), and Hastings *a.* Belknap (1 *Den.*, 190), turn in reality on the right of the landlord *as landlord*, not as creditor.

Cases, in which creditors, having no process but an attachment, have attempted to attack transfers of property, are numerous, and no doubt seems to have been raised as to their right to do so. (See Damon *a.* Bryant, 2 *Pick.*, 111 ; Cross *a.* Phelps, 16 *Barb.*, 502 ; Clute *a.* Fitch, 25 *Ib.*, 428 ; Noble *a.* Holmes, 5 *Hill*, 194 ; Van Etten *a.* Hurst, 6 *Ib.*, 311; Miller *a.* Brinkerhoff, 4 *Den.*, 118; Halsey *a.* Christie, 21 *Wend.*, 9.) In 25 *Barb.*, the court said : " If McNeil had been a creditor of Timby (the fraudulent vendor), the plaintiff (the officer), who represented him in this action, would have been in a position to attack the sale as fraudulent" (p. 431) ; and yet in this case the officer had an attachment only. Similar dicta are found in several of the cases above cited. In the case of Falconer *a.* Freeman (4 *Sandf. Ch. R.*, 565), Vice chancellor Sandford distinctly held, that a

levy under the attachment given by the Absconding Debtor
Act, gave the creditor, though only a creditor at large, the right
to the aid of the Court of Chancery in enforcing his lien on
property fraudulently transferred; and this case has been fol-
lowed by Judge Hoffman in the Superior Court, in a case not
reported, where the plaintiff held the attachment given by the
Code.

When a creditor resorts to the Court of Chancery for relief
against a fraudulent disposition of his debtor's property, the
position he must occupy in order to give him a standing in
court, varies with the nature of the relief he seeks.   In some
cases he may be heard as a creditor at large, without judgment
or process, as when he comes into court asking for the adminis-
tration, or marshalling of assets or trust funds, according to
equity, claiming no priority by his suit over other creditors.
In such a suit, he may attack fraudulent dispositions of property
by his debtor, and have the property brought in as part of the
assets or trust-funds, though he be merely a simple contract
creditor.   (Conro *a.* Port Henry Iron Company, 12 *Barb.*, 27,
58, 59 ; Shields *a.* Anderson, 3 *Leigh*, 729 ; Loomis *a.* Tifft, 16
*Barb.*, 541 ; Robinson *a.* Stewart, *Ct. Appeals, Seld. Notes,
April*, 1854.)  If he attack a fraudulent disposition of his
debtor's *real estate*, for the purpose of subjecting it to the lien
of his own debt only, he must have a judgment which would
be a lien at law, but for the fraudulent conveyance.  (Brinker-
hoff *a.* Brown, 4 *Johns. Ch.*, 671.)  If he seek similar relief
against fraudulent transfers of personal property which might
be levied on under execution, he must have not only a judg-
ment, but an execution in the sheriff's hands.  If he seeks relief
against the debtor's choses in action, he must have an execution
*returned unsatisfied*, the ground of the equitable jurisdiction in
the latter case being that the remedy at law has been exhausted.
(Hadden *a.* Spader, 20 *Johns.*, 554 ; Corey *a.* Cornelius, 1 *Barb.
Ch. R.*, 571 ; Crippen *a.* Hudson, 3 *Kern.*, 161; Reuben *a.* Joel,
*Ib.*, 488.)

On the whole, the argument seems conclusive that as an attach-
ment properly issued gives the creditor a right to take the de-
fendant's property, it gives him a position in court to show that
such property, though claimed by third persons, is in reality the
property of the debtor, *quoad* his creditors, and the fact that one

ground for granting an attachment under the Code is, that the debtor has fraudulently transferred his property, confirms this conclusion. It is said that the Code only authorized the sheriff under an attachment to take the *defendant's* property. But an execution authorizes nothing more. Whether the sheriff justifies under attachment or execution, he must show that the property seized was, as to the plaintiff in the writ, the property of the defendant.

It has been said that as a creditor justifying under attachment merely, without a judgment, must prove his debt, and as the claimant of the property may dispute it, an issue is raised which ought not to be tried except in the attachment suit, and so an argument *ab inconvenienti* is raised against the propriety of allowing a creditor by a simple contract to attack a fraudulent sale. The argument has this weight and no more. I suppose if a sheriff justified under judgment and execution, it might to the same extent be open to the claimant of the property to show that the judgment had been paid; and so an issue on the question of indebtedness be raised in a collateral suit.

The truth is, that the production of the judgment, where an officer justifies under an execution, is required simply to show valid process, not to establish the debt. One with valid process to collect a debt is presumed to be a creditor. (Bessey *a.* Windham, 6 *Q. B.* (*Adol. & El.*, *N. S.*), 166.) The judgment is equally conclusive whether it be a judgment by confession or after contest. No court would allow an inquiry into the question whether it was a just judgment when rendered, or whether the defendant in it had a good offset to it. A payment of it, which would render the *execution* a nullity, might possibly be shown, but nothing short of that. The courts have occasionally gone so far as to allow the production *in banc* of the judgment-record, to cure an exception that it had not been produced on the trial, thus showing that they consider it as not to be controverted. (High *a.* Wilson, 2 *Johns.*, 46 ; Mastyn *a.* Podger, 5 *Burr*, 2631); and yet, if the alleged fraudulent transferee were not a *fraudulent* transferee, the judgment, as *res inter alios acta*, would be no evidence at all against him ; being a *fraudulent* transferee, he occupies, in the eye of the law, precisely the place of the debtor, and cannot be heard to gainsay what the debtor cannot be heard to gainsay. If this idea were clearly

kept in mind, the courts would have escaped some errors they have fallen into, and might yet come to the sound conclusion that, as the debtor in the attachment cannot, in a *collateral* proceeding, be heard to dispute the debt on which it issued, so ought not one who is in entire privity with him.   (See Candee *a.* Lord, 2 *Comst.*, 269.)

—————— ———, for the plaintiff.

BY THE COURT.—BROWN, J.—The plaintiff claimed to recover the goods in controversy, under a bill of sale duly executed to her by one Robert Hall, who was the owner at the time.   The bill was executed and delivered on the 30th November, 1857, and the object of the parties to the instrument was to secure to the plaintiff the sum of $1000, due to her from the vendor. The defendant is the sheriff of the county of Kings, and he justified, or claimed to justify, the taking of the goods under a warrant of attachment, issued by the Hon. Thomas W. Clerke, one of the justices of this court, in an action pending therein, wherein Dewitt C. Hay was plaintiff, and Robert Hall, the vendor of the goods, defendant.   The warrant was issued on the 30th day of November, 1857, and the proof showed that the goods were seized and taken from the possession of the plaintiff at Flatbush, in the county of Kings, on the 1st day of December thereafter. Various questions were raised and decided in the progress of the trial.   Such as the force and effect of the assignment under which Hay, the plaintiff in the warrant of attachment, claimed the debt as assignee; and as to the proof of the debt, and the sufficiency and admissibility of the affidavits to authorize the issuing of the warrant; which it is not necessary to notice further.   Because the judge tried the cause throughout upon the rule, that the plaintiff in the warrant of attachment had no standing in court to enable him to litigate the question of fraud in the sale from Robert Hall to the plaintiff, which was the sole defence to the action.   All the other questions were subordinate to, and dependent upon this, and if the judge was right in his view of the law, the judgment should stand; and if not, it should be reversed.

I shall examine whether a person claiming to be a creditor with a warrant of attachment under the Code, but with no judg-

ment or execution for his debt, has a standing in court which will enable him to impeach and litigate the *bona fides* of a sale of goods by his alleged debtor to a third person, which has been consummated by transfer and delivery of the possession before the lien of the warrant attached. It is worth while to consider it briefly upon principle before looking at the authorities.

Every conveyance or assignment, in writing or otherwise, of any estate or interest in lands, or in goods or things in action, &c., made with intent to hinder, delay, or defraud creditors, &c., as against persons so hindered, delayed, or defrauded, shall be void. Not absolutely and positively void, but void in a limited and qualified sense. In another sense good and valid, and sufficient to pass the title. Good as against the vendor or assignor, and those claiming under him (except in the special case of his personal representatives), but void and of no effect as to his creditors who have been hindered, delayed, or defrauded by the sale or conveyance. In short, such sales and conveyances are voidable at the suit of a creditor of the vendor, and if no creditor interposes and complains, they are as binding and effectual to pass the title as if made with the best intents, and for the most innocent and commendable purposes. To enable a party, therefore, to question and put in controversy the *bona fides* of a sale of goods, it must appear affirmatively that he is a creditor of the vendor, not merely that he is a person claiming a debt or obligation due to him from the vendor which he proposes to establish by proof; because if it is to be established by proof it may be repelled by proof, and thus the principal fact which lies at the foundation of the whole proceeding would be suspended in doubt. But the character in which the attacking party prosecutes the action or interposes the defence, and claims to overthrow the sale or conveyance, must be settled and put at rest by the judgment or decree of a competent court. Any other rule than this would put in issue in the same cause two separate and incongruous questions, one upon the existence of the debt and the other upon the good faith of the sale, and in the first of which the proper parties would not be before the court.

In the present case, Dewitt C. Hay, the plaintiff in the warrant of attachment, claimed to be a creditor of Hall, the vendor of the goods, as assignee of one Frank Hay, who claimed to

hold the debt as assignee of Angus Cammeron; the original creditor. These facts the sheriff proposed to prove upon the trial, and if it was competent for him to prove that Hall was debtor to Cammeron who had assigned to Frank Hay, and that the latter had assigned to Dewitt C. Hay, it was also competent for the plaintiff to disprove them if she was able. And thus before the parties could reach the question of fraud in the progress of the trial, all the other questions raised would necessarily have to be examined and determined, and that too in the absence of Robert Hall the debtor, who was not a party to the action. Courts of law have not usually taken cognizance of issues so dissimilar and incongruous in the same action.

The warrant of attachment may issue according to chap. iv. of the Code, in an action for the recovery of money whenever it shall appear by affidavit that a cause of action exists against the defendant; that the defendant is either a foreign corporation, or not a resident of this State, or has departed therefrom with intent to defraud his creditors, or to avoid the service of a summons, or keeps himself concealed therein with like intent, or has removed, or is about remove, any of his property from this State with intent to defraud his creditors, or has assigned, disposed of, or is about to dispose of or secrete his property with like intent. Security is to be given by the plaintiff to pay the damages and costs to be sustained by the defendant in the action by reason of the attachment, if the plaintiff fails to recover. The directions of the warrant are that the sheriff attach and safely keep all the property of the defendant within his county to satisfy the plaintiff's demand. These provisions indicate no intention to give to the creditors of a vendor of real or personal estate, any new or additional remedy against his alleged fraudulent vendee, because the security given upon granting the warrant is to indemnify the defendant therein, and not the person who has purchased the property, and from whose possession it is taken by the sheriff; and, also, because the defendant may have an order to discharge the warrant of attachment upon giving the requisite security pursuant to sections 240 and 241, and then the property is to be delivered over to him, and not to his vendee, from whom the sheriff may have taken it. Besides the warrant of attachment may be issued upon the sole ground of non-residence, and it could not have been intended to give to

persons claiming to be creditors of non-resident debtors, rights against third persons in respect to fraudulent sales, which are withheld from those claiming to be creditors of resident debtors in respect to the same thing. If the right to pursue the goods into the hands of a purchaser, and try the question of fraudulent intent before the question of creditor is established, and the claim has assumed the form of a judgment and execution, exists as to the creditors of one class of debtors, it must exist as to all, resident as well as non-resident. The warrant of attachment, and the affidavits upon which it issued, establish nothing as to those not parties to the action. So far as purchasers from the defendants therein are concerned, they do not entitle the plaintiff to the character and rank of a creditor, and until he puts himself in that position by obtaining the judgment or decree of some competent court in his favor, he cannot be heard in an action to impeach for fraud and bad faith a sale made by his pretended debtor.

The Court of Chancery will not lend its aid to a creditor to obtain satisfaction of his debt out of property not liable to be levied upon by execution, unless he show a judgment recovered, and an execution thereon returned unsatisfied. He must first exhaust his remedy at law. Nor will the court lend its aid to remove an obstruction or impediment interposed to the collection of his debt, unless he also shows a judgment docketed, if the subject sought to be recovered is real estate ; or an execution issued, if the subject is personal estate, and which would have been a lien but for the obstruction which he seeks to remove. (Crippen *a.* Hudson, 3 *Kern.*, 161 ; McElwain *a.* Willis, 9 *Wend.*, 548.) These principles familiar to every practitioner, serve to show the certainty which the law requires when the creditor seeks to impeach the transactions of his debtor with third persons. To entitle a party to avoid a deed as fraudulent in respect to creditors, he must claim under a valid judgment. (Jackson *a.* Caldwell, 1 *Cow.*, 622 ; Coleman *a.* Croker, 1 *Ves.*, 160; Bean *a.* Smith, 2 *Mason*, 282.) In Lake *a.* Billings (1 *L. Raym.*, 733), trespass was brought against the sheriff for goods taken. Upon not guilty he gave in evidence that he levied on them in execution by virtue of a *fieri facias*. The plaintiff made title by a prior execution, but fraudulent, and by a bill of sale made of them to him by the officer, viz., the sheriff's predecessor to

the defendant. And upon the trial it was ruled, that the defendant ought to give in evidence a copy of the judgment. But it would have been otherwise if trespass had been brought by the person against whom the *fieri facias* issued. In the case of Mastyn *a.* Podger (5 *Burr.*, 2631), the plaintiff claimed the goods under a bill of sale from William Mastyn which was said to be fraudulent, and the defendant justified under a writ of *fieri facias* issued against William Mastyn. The court, by Lord Mansfield held, that it was necessary to produce the judgment. Vide also, Ackworth *a.* Kempe (*Doug.*, 40), where the same rule was applied upon the trial, and afterwards approved at bar in regard to one of the writs of *fieri facias*, under which the defendant attempted to justify the taking of the goods. In Parker *a.* Walrod (16 *Wend.*, 514), decided in the late Court of Errors. Chancellor Walworth says, in the three cases last quoted, and also in High *a.* Wilson (2 *Johns.*, 46), "the plaintiff showed title in themselves, derived from the defendant in the execution before the lien of the execution attached thereon. The execution itself, therefore, was no defence to the officer, who could only make it available against a stranger to it by connecting it with a judgment, and then showing that the transfer of the property to the person thus claiming was fraudulent and void as against the creditors who had recovered the judgment. In this view of the subject, it will be seen that the cases referred to may be sustained upon principle, as the production of the judgment-record was necessary to establish the fact that the execution issued upon a judgment rendered for a cause of action which existed, or for a debt contracted before the issuing of the execution, otherwise there would have been no creditor as against whom the transfer of the property could have been fraudulent." In Frisbey *a.* Thayer, (25 *Wend.*, 396), the question was between a landlord of the owner of the goods, with a right to distrain and to follow the goods, and a mortgagee who had removed them from the demised premises within thirty days. The point was taken, that as there was no change of the possession the mortgage was fraudulent. NELSON, Ch. J., in regard to this question, says : "Neither does the statute (2 *Rev. Stats.*, 70, § 5) making mortgages void as to creditors and subsequent purchasers apply, as the question there can only arise between judgment-creditors and the mortgagee. A distress-warrant does not stand on the footing of a judgment

and execution." The warrant of attachment directs the sheriff to attach and satisfy, keep the property of the defendant sufficient to satisfy the plaintiff's demand, and the writ of *fieri facias* or execution, also directs him to satisfy the plaintiff's judgment out of the personal property of the defendant, not the property which he has sold and delivered over to another before the lien of the process has attached. In no sense can property so sold and transferred be deemed the property of the defendant in the execution or warrant of attachment. As against him the title of the purchaser is perfect and complete. The law may adjudge that such property shall be appropriated to the payment of the vendor's debts, but it does so upon the principle that in equity and justice it belongs to his creditors.

I, therefore, conclude that the judge was right in excluding the evidence offered by the defendant, to show the indebtedness from Robert Hall to Angus Cammeron, and also when he instructed the jury that the only questions in issue were the taking of the property by the defendant, the title of the plaintiff to it and its value.

The judgment should be affirmed.

---

## ATKINSON *a.* COLLINS.

*Supreme Court, First District; General Term, November,* 1859.

### PLEADING.—SPECIAL CONTRACT.

Under a complaint for services generally, the plaintiff cannot recover for services under a special contract, which has not been fully completed. If he would recover for such services, he must, as well under the Code as before, plead the contract, and the partial performance.

Appeal from a judgment.

BY THE COURT.*—CLERKE, J.—This action was brought to recover for work and labor performed by plaintiff for defendant,

---

* Present, ROOSEVELT, P. J., CLERKE and SUTHERLAND, JJ.