[Lex Loci.    Probate of Testamentary Paper.]

ARMSTRONG *against* LEAR, *Administrator* (with the will annexed) of KOSCIUSZKO.

-A testamentary paper executed in a foreign country, even if executed so as to give it the effect of a last will and testament by the foreign law, cannot be made the foundation of a suit for a legacy in the Courts of this country, until it has received *probate* here, in the Court having the peculiar jurisdiction of the probate of wills and other testamentary matters.

APPEAL from the Circuit Court for the District of Columbia.

The bill, filed on the Chancery side of the Circuit Court, stated, that Thaddeus Kosciuszko, on the 5th of May, 1798, placed a fund in the hands of Thomas Jefferson, and executed a will, as follows : " I, Thaddeus Kosciuszko; being just on my departure from America, do hereby declare and

1827.

Armstrong
v.
Lear.

direct, that, should I make no other testamentary disposition of my property in the United States, I hereby authorize my friend, Thomas Jefferson, to employ the whole thereof in purchasing negroes, from among his own, or any others, and giving them liberty in my name, in giving them an education in trade or otherwise, and in having them instructed for their new condition in the duties of morality, which may make them good neighbours, good fathers or *moders,* husbands or wives, in their duty as citizens, teaching them to be defenders of their liberty and country, and of the good order of society, and in whatsoever may make them happy and useful. And I make the said Thomas Jefferson my executor of this. (Signed,) T. Kosciuśzko. 5 May, 1798."

The bill further stated, that the said Kosciuszko, about the 18th of June, 1806, being then domiciled in Paris, executed a certain will or writing testamentary, as follows: " Know all men by these presents, that I, Thaddeus Kosciuszko, formerly an officer of the United States of America, in their revolutionary war against Great Britain, and a native of Liloane, in Poland, at present residing at Paris, do hereby will and direct, that, at my decease, the sum of 3,704 dollars, current money of the aforesaid United States, shall of right be possessed by, and delivered over to the full enjoyment and use of Kosciuszko Armstrong, the son of General John Armstrong, Minister Plenipotentiary of the said States at Paris; for the security and performance whereof, I do hereby instruct and authorize my only lawful executor in the United States, Thomas Jefferson, President thereof, to reserve, in trust for that special purpose, of the funds he already holds belonging to me, the aforesaid sum of 3,704 dollars in principal, to be paid by him, the said Thomas Jefferson, immediately after my decease, to him, the said Kosciuszko Armstrong, and in case of his death, to the use and benefit of his surviving brother. Given under my hand and seal, at Paris, this 28th day of June, 1806.

" (Signed,) Thaddeus Kosciuszko. [Seal.]
' In presence of
· (Signed,) Charles Carter.
James M. Morris."

That the said testator, on the day of the date of said writing, signed and sealed it in presence of two competent witnesses, who attested the same, and acknowledged it on the same day, as his act and deed, before Fulwar Skipwith, commercial agent, and agent for prize causes for the said United States at Paris, and delivered it to the said John Armstrong. That the complainant is advised that the said paper is a last will and testament, and must operate as such, and revokes, *pro tanto*, the bequests and appropriation made in the will first mentioned. That General Kosciuszko died the 15th of October, 1817, leaving said testament unrevoked. That said Jefferson refused to take letters testamentary under said will, and that the defendant was duly appointed administrator with the will annexed; that the estate has come to his hands, and that he has been often requested to pay to complainant the 3,704 dollars aforesaid, with interest, and refuses to pay until an order or decree of this Court in the premises. The bill prayed for a discovery of the funds in defendant's hands, and whether the said writing made at Paris is authentic, and payment of said legacy with interest, and for general relief.

The answer of the defendant admitted that he was administrator with the will annexed of General Kosciuszko, and that the instrument mentioned in complainant's bill, and exhibited with it, was executed and acknowledged as it purports to be, and that said Kosciuszko was at the time domiciled and resident at Paris; but submitted whether he was bound to pay said legacy upon an instrument so executed and acknowledged, inasmuch as Mr. Jefferson received a letter from General Kosciuszko dated as late as the 15th of September, 1817, in which he thus affirms his first will. " After my death you know its invariable destination," (speaking of this fund.) The answer admitted, that Mr. Jefferson renounced, and the defendant was appointed, administrator with the will annexed, as stated in the bill. The defendant admitted funds to have come to his hands to an amount larger than stated in the bill. The answer further stated, that among the papers received by the defendant from Mr. Jefferson, is a letter from Mr. Politica to said Jefferson, enclosing a despatch from the Vice Roi of Poland

to him, by which it appears that the whole estate of said Kosciuszko may hereafter be claimed by a Major Estko, as the heir at law of said Kosciuszko; that there were also two letters from a Mr. Zeltner to Mr. Jefferson, by which it appears that Kosciuszko had disposed of the greater part of his fortune in favour of the children and other relations of Zeltner.

The cause was set down for a hearing in the Court below upon the bill and answer, and a *pro forma* decree dismissing the bill was entered by consent, and an appeal taken to this Court.

*Feb. 6th.*

Mr. *E. Livingston* and Mr. *Wheaton* for the appellant, argued, (1.) that the testamentary paper of 1806 was a revocation of the will of 1798 *pro tanto.*[a]

(2.) That the will of 1798 was to be considered as wholly void, as being contrary to the laws and policy of Virginia and Maryland, and the defendant considered as a trustee for the first will.[b]

(3.) That supposing the case was to be determined by any peculiar law, as affecting the testator or his property, it must be either the law of France, where he was domiciled in 1806, when the will was made; or of this country, where he had placed the fund in question, and of which he might be considered a citizen; or the conventional law between France and the United States.

The rule of international law as to personal property appeared to be settled by the general current of authority, that as to successions *ab intestato*, they are to be governed by the law of the country where the party was domiciled at the time of his death; and in the case of a will, by the law of the place where it was made.[c] But in a recent case in the Ec-

*a* 2 *Atk.* 86. 2 *Philim. Eccles. Rep.* 35—51. 1 *Bro. Civ. and Adm. Law,* 293. 333. *Swinb.* pt. 1. p. 74. note 75. and cases cited by *Powel,* Ed.

*b* 4 *Wheat. Rep.* 1. 5 *Harris & Johns.* 392. *Bridg. Duke's Charit. Uses,* 349. 466. *Com. Dig.* tit. Charitable Use, (N.) 1.

*c* *Huber.* tom. 2. l. t. 3. 2 *Bos. & Pull.* 229. note (a.) 6 *Bro. Parl. Cas.* 566. 5 *Ves. Jr.* 785. 1 *Binn.* 336. 349. note (a.) 1 *Mason,* 381. 408. 3 *Ves. Jr.* 201.

clesiastical Court in England, Sir J. Nicholl had considered the authorities as rather applying between different parts of the same empire, than between different countries entirely foreign to each other.[a] If the law of France was to be applied although the will was not executed in strict and literal conformity with the forms provided by the code Napoleon, it might be sustained as a donation *mortis causa ;* a species of donation which the best commentators were of opinion was not abolished by the code, it having been preserved in Chancellor D'Aguesseau's ordinance of 1731.[b] And perhaps it might also be considered a valid donation *mortis causa* by our law.[c] In the case above cited, determined by Sir J. Nicholl, he refers to the *Dutchess of Kingston's case,* and confirms it, where a will, " though made in France, where she was domiciled, being made by an English subject in the English language, and according to English forms, and to be executed in England, was valid *as to personal property in England,* though (neither being holographic nor made before a notary) it would, by the French law, have been of no validity. Nay, not only was it held good, but if the opinion of an eminent lawyer, (M. Targat;) as stated in the *Collectanea Juridica,* be correct, it was good, and would operate on the property in France."[d] But it was further insisted that the execution of the testamentary paper before the consul at Paris was conclusive of its validity, and dispensed with the necessity of probate in the Courts of this country. This was inferred from the conclusive effect attributed to what are termed " authentic *acts*" by the law of France, taken in connexion with the provisions in the convention of 1800 between France and the United States, (art. 7. 10.) and the statute of Congress of April, 1792, ch. 126. s. 2. relating to the powers of con-

*a* Curling v. Thornton, *Adams' Rep.* 21.

*b* Merlin, *Repertoire,* tom. 4. p. 144. *Paillet, Droit Français,* p. 159.

*c* 1 *Swinb.* 54. *Prec. in Ch.* 300. 2 *Bro. Ch.* 612. 2 *Ves. Jr* 120. *Lowndes on Legacies,* 449. 1 *P. Wms.* 406. 441. 2 *Ves.* 431 *d* 2 *Adams' Rep.* 21

suls in the verification of such *acts,* among which testamentary papers are included.[a]

The *Attorney General* and Mr. *Lear,* for the respondent, contended, that the question whether the paper of 1806 was to be considered as a revocation *pro tanto* of the will of 1798, depended upon its being authenticated as a testamentary disposition in the manner prescribed by the laws of this country. They referred to the well known rule, which had been frequently recognised in this Court, that foreign laws must be proved as facts. or they could not be taken notice of judicially by our Courts.[b] That consequently it was a case for the application of the ordinary principle, that a suit could not be maintained in a Court of equity for a legacy, without first showing a probate in the proper Court, of the will under which it was claimed. The admission in the defendant's answer did not dispense with this preliminary, because it was merely intended to admit that " the instrument was executed and acknowledged as it purports to be," submitting its effect and operation to the judgment of the Court. Nor did the treaty and the act of Congress, which had been referred to, dispense with the necessity of probate of the will in the appropriate local tribunal, where all parties interested would have a right to contest its validity. The utmost effect that could be attributed by the conjoint operation of the law of France, the treaty, and the statute of Congress, to the execution and acknowledgment of such an *act* as a will or a codicil, before the consuls of the United States in France, would be to make it conclusive evidence, on which a Court of probates in the United States might proceed : But it could not be considered as dispensing with all the local laws of the States on the probate of wills, and inverting the whole order of proceeding in cases of this sort, by which the paper must be ascertained, by the Court having peculiar jurisdiction of testamentary causes, to be a will, before a Court of equity can be called on to give a construction to it, and to decree a legacy under it. Nor could it be considered as a

---

a *Pothier, Oblig.* pt. 4. ch. 1.    *Code Napoleon,* art. 1317—1319. *Paillet,* p. 159. note (2.)

b 2 *Cranch,* 237.

donation *mortis causa,* and therefore not requiring probate ; since, to constitute such a donation, the gift must be made *in extremis,* and must be accompanied with an actual delivery.[a]

Mr. Justice STORY delivered the opinion of the Court.

The bill in this case is brought against the administrator, with the will annexed, of General Kosciuszko, for the purpose of establishing a right of the plaintiff to receive payment out of the assets of the testator, of a certain bequest to him, contained in a supposed testamentary writing, executed by the testator at Paris, in France, in June, 1806. This supposed testamentary writing is set forth in the bill, and averred to be in the nature and of the effect of a last will or writing testamentary ; but it does not appear to have been admitted to probate, either in France, or in the proper Orphan's Court of this District. The answer admits the existence and authenticity of the instrument, and submits to the Court its import and legal effect, and whether it is to be deemed a last will and testament ; and it also admits assets in the hands of the administrator sufficient to discharge the bequest. The cause was heard in the Court below upon the bill and answer, and from the decree dismissing the bill, the present appeal has been brought to this Court.

The cause has been argued here upon several points, involving a good deal of learning, and some doctrines of international law. We do not enter into an examination of them, because our judgment proceeds upon a single point, and will, in no event, prejudice the merits of the plaintiff's claim.

By the common law, the exclusive right to entertain jurisdiction over wills of personal estate, belongs to the ecclesiastical Courts ; and before any testamentary paper of personalty can be admitted in evidence, it must receive probate in those Courts. Lord Kenyon, in *The King* v. *Inhabitants of Netherseal,* (4 *Term Rep.* 258.) said, " we cannot receive any other evidence of there being a will in this case, than such as would be sufficient, in all other cases, where ti-

1827.

Armstrong
v.
Lear.

*Feb. 21st.*

---

a 2 *Bl. Com.* 514. *Just. Inst.* l. 2. t. 7. s. 1. *Dig.* l. 39. t. 6 *Prec. in Ch.* 269. 1 *P. Wms.* 406. 441. 3 *P. Wms.* 357. 2 *Ves.* 431.

1827.
Armstrong
v
Lear.

tles are derived under a will; and nothing but the probate or letters of administration, with the will annexed, are legal evidence of the will, in all questions respecting personalty." This principle of the common law is supposed to be in force in Maryland, from which this part of the District of Columbia derives its jurisprudence; and the probate of wills of personalty to belong exclusively to the proper Orphan Court here, exercising ecclesiastical jurisdiction. If this be so, and nothing has been shown which leads us to a different conclusion, then it is indispensable to the plaintiff's title, to procure, in the first instance, a regular probate of this testamentary paper in the Orphan's Court of this District, and to set forth that fact in his bill. The treaty stipulations, the act of Congress, and the principles of the law of France, which have been cited at the argument, attributing to them the full force which that argument supposes to establish the validity of the instrument, do not change the forum which is entitled. by the local jurisprudence, to pronounce upon it as a testamentary paper, and to grant a probate. It is one thing to possess proofs, which may be sufficient to establish that a testamentary instrument had been executed in a foreign country, under circumstances which ought to give it legal effect here; and quite a different thing, to ascertain what is the proper tribunal here, by which those proofs may be examined, for the purpose of pronouncing a judicial sentence thereon.

For this reason, the decree of the Court below is to be affirmed, but without prejudice, so that the instrument may be submitted to the decision of the proper Probate Court.