ELIZA PETTIT ET AL., PLAINTIFFS IN ERROR, V. ROBERT W. BLACK, DEFENDANT IN ERROR.

1. **Will:** EVIDENCE OF TITLE. A will is not admissible as evidence of title to real estate, unless it has been admitted to probate; but in case of open, exclusive, adverse possession for more than ten years, it may be sufficient as a claim of right under the statute.

2. **Forcible Entry and Detention:** JURISDICTION. In an action of forcible entry and detention the mere filing by the defendants of an answer claiming title to the premises will not deprive a justice of the peace or county judge of jurisdiction; but if it should appear from the evidence that the question involved was one of title and not for possession of the premises, the case must be dismissed.

3. **Exceptions.** Unless exceptions have been taken in the trial court to the admission or refusal to admit testimony, no error can be predicated thereon.

4. **Evidence** examined and held to sustain the judgment.

ERROR to the district court for Cass county, where the cause was heard before POUND, J. The facts appear in the opinion.

*C. A. Baldwin,* for plaintiffs in error.

The rights of Mrs. Pettit to the land were not determined in the case of *Pettit v. Black,* 8 Neb., 52. She was not a party, and is not bound. *Brown v. Wyncoop,* 2 Blackf., 230. *Lenox v. Netrobe,* Hump., 251. *Ex parte Howard,* 9 Wall., 175. Freeman on Judgments, sec. 171 *a.* The mortgages referred to do not in any manner affect this action. The land was not sold under the mortgages. A proceeding *in rem.* is against the thing itself. The case in 8 Neb., 52, was an action to quiet title. It was a proceeding *in personam.* It was not a suit against the land. The land was not even in default to the state of its taxes. Mrs. Pettit is not estopped. *Parker v. Barker,* 2 Met., 423.

*George W. Covell* and *Sam M. Chapman,* for defendant in error.

The adjudication was a proceeding *in rem.* The land was condemned to pay the claim of the state, or John Black, who was subrogated to all the rights of the state. It was a transaction between the court and the purchaser. *Hurt v. Stull,* 4 Md. Ch., 391. *Iglehart v. Anniger,* 1 Bland, 527. *Forman v. Hunt,* 3 Dana, 622. *Campbell v. Johnson,* 4 Dana, 186. Robert Black does not claim the title of the Pettits; he claims one paramount—the paramount right of the state to seize and dispose of the property in default of the owner, whoever he or she may

be. · *More v. Schultz*, 13 Penn. State, 102. *Beauregard v. New Orleans*, 18 How., 502. Mrs. Pettit is estopped, and cannot call in question the title of Robert Black in a colatteral proceeding. *Gregg v. Wells*, 10 Ad. & E., 90. *Whitman v. Bolling*, 47 Ga., 125. *Basher v. Wolfe*, 59 Ill., 470. *Treadway v. The Sioux City & Pacific R. R.*, 39 Iowa, 663.

MAXWELL, J.

This is an action of forcible detention. It was brought in the county court of Cass county, and judgment rendered in favor of the defendant. The case was taken on error to the district court, where the judgment was affirmed. The plaintiffs bring the case into this court by petition in error. The errors assigned in the district court were the following:

1. The court had no jurisdiction to try and determine the case.

2. "The judgment was not according to law, but was in express and open violation of law.

3. "The court erred in the admission of certain testimony against the objection and exceptions made at the time by these plaintiffs.

4. "The court erred in refusing to admit certain evidence offered on the part of and in behalf of these plaintiffs.

5. "The judgment was against these plaintiffs, when by the law of the land it should have been for them and against said Black.

6. "There are many and manifest errors existing and appearing of record in said case."

The question to be determined in this court is, did the district court err in overruling these assignments of error?

This case grew out of that of *Pettit v. Black*, 8 Neb., 52. That was an action by H. H. Pettit, the husband of Eliza Pettit, and one of the plaintiffs in error in this case, to

have certain tax deeds to John Black declared invalid for various causes, which were set forth with great particularity in the petition, the principal ground being that the plaintiff, "during all of the years 1870, 1871, and 1872, the years in which the taxes for which the land was sold became delinquent, resided on said lands with his family, and owned and had in his possession on said real estate sufficient personal property out of which the said treasurer could have made said taxes by seizure and sale, but that said treasurer made no attempt or effort to collect said taxes out of said personal property." *Pettit v. Black*, 8 Neb., 57. Black, in his answer in that case, denied the ownership of Pettit in the real estate in question, and denied that Pettit had sufficient personal property out of which the taxes could have been collected by seizure and sale, and claimed that he (Black) was the owner of said premises by virtue of said tax deeds, but prayed the court to decree, in case the tax deeds were declared invalid, that he have a lien upon said land for the purchase money and interest, together with subsequent taxes paid on said land, and that the same be foreclosed. The district court found one-third of said real estate, and no more, belonged to H. H. Pettit, and entered a decree setting aside said tax deeds of Black as to one undivided third part of said premises, and no more. Both parties appealed to this court.

In that case there was testimony tending to show that Pettit was the owner of this land, and his wife was called by him as a witness, and testified that during a portion or all of the time that said taxes were due, her husband had sufficient personal property in Cass county out of which the county treasurer could have collected the taxes in question. Black objected in that action that Mrs. Pettit was not made a party. The court in considering that question say (page 59): "While she does not join in this action as a party plaintiff, she will be presumed to have acquiesced in the same as being brought for her benefit, as well as that

of her husband. The title of the plaintiff is good to the whole of said real estate, as against the defendant, and for the purposes of this action."

In that action it was not alleged or claimed that Mrs. Pettit had any personal property out of which the taxes could have been collected, and but for the fact that H. H. Pettit had personal property within the county from which · the treasurer could have collected the taxes for which the land was sold, the tax deeds would have conveyed the title. The court, therefore, following the case of *Johnson v. Hahn,* 4 Neb., 139, finding from the evidence in the record that H. H. Pettit had such personal property, set the tax deeds aside and permitted the parties to redeem within six months by paying the purchase money and twelve per cent interest, the decree being entered in this court.

As the reason for the decree, the court say (pages 61–2): "As between John Black and the county of Cass, the case is different. The county was possessed of a lien upon the lands of Pettit for taxes; the county treasurer, acting in a capacity quite analogous to that of agent of the county, sold the lands to Black. Now while this sale was inoperative to pass even an inchoate title to the lands, together with the receipt and retention of the money from Black, it was sufficient as the foundation for the ratification by the county of the sale and transfer of its lien for these taxes to him. It will be presumed that the county treasurer paid the money received from Black into the county treasury, and that the county, having retained the same for several years, has ratified the acts of her officer in respect to the same. Black will therefore be subrogated to all the rights of the county in the premises." A mandate was sent from this court to the district court of Cass county to carry the decree into effect. The premises not being redeemed, a sale was had, and the premises sold to Robert W. Black. The sale was reported to the court and confirmed, and a deed ordered,

and the sheriff was ordered to put the purchaser in possession. A deed was duly made by the sheriff to the defendant, but as the plaintiffs herein refused to give possession this action was brought.

On the trial of the case in the county court, Black, to maintain the issues on his part, introduced in evidence the decree, as follows: "Upon consideration whereof, the court finds the title of all the lands described in the petition to be in plaintiff. That the advertisement, sale, and conveyance of said lands for taxes are null and void and of none effect; that the defendant is entitled to a lien for the amounts paid in the petition, together with interest thereon from the time the same severally became delinquent on the first day of May each year respectively, at the rate of twelve per cent per annum as follows, to-wit: For the year 1870, $29.60; for the year 1871, $28.79; for the year 1872, $28.53; for the year 1873, $21.77; for the year 1874, $39.31; for the year 1875, $62.92; for the year 1876, $25.82; for the year 1877, $38.98. It is therefore considered adjudged and decreed by the court that, in case said plaintiff fail for the period of six months from the date of this decree to pay into the hands of the clerk of this court the said several sums of money, with interest thereon as aforesaid, that an order issue commanding the sheriff of Cass county to appraise and sell the lands described in the petition, to-wit: The north-east quarter of section nine, town twelve, and also the south half of the south-east quarter of section four, town twelve, all in range thirteen, east of the sixth principal meridian, in manner provided by law for sale of real estate upon the foreclosure of a mortgage." Also, the journal entry in the same case in the district court of Cass county, from which it appears that the amount of taxes due May 1st, 1879, was $447.43. And that in case of the non-payment of said sum the district court directed an order of sale to issue on the seventh day of May, 1879, requiring the sheriff to appraise, advertise, and

sell said land as upon foreclosure of mortgage, etc. Black also introduced in evidence a journal entry of said court showing a confirmation of the sale, and an order to the sheriff to make a deed and put the purchaser in possession of the premises. Also, the sheriff's deed. The deed contains the following, among other recitals: "And, whereas, the said sheriff as aforesaid, under and by virtue of said order of sale did, on the eleventh day of August, A.D. 1879, at the south door of the court-house in said county of Cass, that being the place where the last term of the district court was held, having first summoned two disinterested freeholders, residents of said Cass county, and having administered to them an oath impartially to appraise said lands and tenements upon actual view thereof, and the said sheriff, together with the said freeholders, having made an appraisement in writing of said lands and tenements, and having first given due and legal notice of the time and place of said sale for not less than thirty days prior thereto in the Nebraska *Herald*, a newspaper printed in and in general circulation in said county of Cass, did sell the said lands and tenements at public auction to Robert W. Black, for the sum of fifteen hundred and eighty-five dollars, he being the highest bidder therefor, and said last mentioned sum being not less than two-thirds of the appraised value thereof, which sale was afterward, at the November term of said district court, A.D. 1879, examined and confirmed by the said court, and the said R. W. Hyers, sheriff of Cass county, ordered by the said court to make a deed of the said lands and tenements to the said Robert W. Black."

There were also certain orders of sale upon the foreclosure of mortgages in the hands of the sheriff which are not involved in this case, but will explain why more land than sufficient to satisfy the amount of taxes due was sold. Black also introduced other evidence tending to show his right to the possession of the land, and that the plaintiffs

in error kept him out of the possession.   H. H. Pettit filed an answer disclaiming title.   Eliza Pettit filed the following answer:

"And now comes the said Eliza Pettit, one of the above named defendants, and says that she is now and ever since the year 1858 has been in the actual, open, and notorious possession of the premises in plaintiff's complaint filed herein.   That she is now, and ever since the date last named above mentioned, has had the legal and equitable title to the undivided one-third of said premises; that her said title is of record in the records of said county; that her said title and interest are now in full force and operation, and she at no time has parted with her said interest and title, nor has the same been determined against her by the decision of any court; that her claim to said premises, and her said title to the same are now pending in the district court of this county in a suit wherein she is plaintiff, and Robert W. Black, this plaintiff, and others are defendants; that said suit was pending and commenced long before the commencement of this action.   Wherefore she says this court has not jurisdiction to try and determine this matter, and she prays this suit be dismissed."

To sustain the answer the plaintiffs in error offered in evidence a copy of the will of A. J. Todd, dated January 7th, 1858.   This instrument was indorsed as follows:

"In probate court this fourteenth July, 1858, came Charles H. Wolcot, and being sworn, says that the above writing is the will of A. J. Todd, and that he saw the said deceased write his name thereto.   Therefore, this will by me approved as the will of A. J. Todd, of Cass county, N. T."

There is no signature to this indorsement, nor anything to show by whom it was written.   The will was objected to on behalf of Black because it was not proven or admitted to probate, and no foundation was laid for its introduction, and there was no legal will.   The objections were overruled, and the copy of the will admitted.   H. H. Pettit

also testified that he married Eliza Todd in 1861, and had lived with her on the place since that time, and that no proceedings had been against her to recover possession of the premises.

There is also the following stipulation in the record: "It is hereby stipulated that the decree in proceedings in suit of *Rob. G. Doom v. H. H. Pettit and Eliza Pettit* in the district court during the year 18..., and the decree in foreclosure in favor of John Fitzgerald in the district court of Cass county, rendered in ......... 187.., at the ......... term of said district court, in which H. H. Pettit and Eliza Pettit were defendants, in which mortgage deeds in favor of said plaintiffs, R. G. Doom and John Fitzgerald, executed by said H. H. Pettit and Eliza Pettit, were foreclosed, upon the real estate in controversy in this suit, were subsisting liens upon said real estate, for the possession of which this action is brought, and that orders of sale were issued upon said decrees, and were in the hands of the sheriff of Cass county at the date of the sale of said premises to plaintiff, Robert Black."

Sec. 143 of chap. 17 of the General Statutes provides that: "No will shall be effectual to pass either real or personal estate unless it shall have been duly proved and allowed in the probate court, as provided in this chapter, or on appeal in the district court, and the probate of the will of real or personal estate as above mentioned shall be conclusive as to its due execution."

Sec. 160 provides that: "Every will, when proved as provided in this subdivision, shall have a certificate of such proof indorsed thereon or annexed thereto, signed by the judge of probate and attested by his seal; and every will so certified, and the record thereof or a transcript of such record, certified by the judge of probate and attested by his seal, may be read in evidence in all courts within this state without further proof."

Sec. 161 provides that: "An attested copy of every will

devising lands, or any interest in lands, and of the probate thereof, shall be recorded in the registry of deeds of the county in which the lands thereby devised are situated."

The county court having admitted a copy of the purported will in evidence over Black's objection, and as he is not here complaining, the case will stand precisely as though the loss of the original had been proved and the copy rightfully admitted in evidence. But the copy can have no greater force than the original as evidence of title under our statute, where it had not been admitted to probate.

Probate of a will is defined to be: "The proof before an officer authorized by law that an instrument offered to be proved or recorded is the last will and testament of the deceased person whose testamentary act it is alleged to be." 2 Bouv. Law Dict., 378. In other words, probate is proving the instrument purporting to be a will to have been signed by the testator in the presence of at least two witnesses, who at his request signed the same as witnesses; and that the testator, at the time of the execution thereof, was of sound mind. The statute provides that notice of the time of proving the will shall be given to all persons interested in the estate, and thus an opportunity given to all persons interested therein to appear and contest the same.

Sec. 141 of the chapter entitled "decedents" provides that: "If no person shall appear to contest the probate of a will at the time appointed for that purpose, the court may, in its discretion, grant probate thereof on the testimony of one of the subscribing witnesses only, if such a witness shall testify that such will was executed in all particulars as required in this chapter, and that the testator was of sound mind at the time of the execution thereof."

Sec. 142 provides that: "If none of the subscribing witnesses shall reside in this state at the time appointed for proving the will, the court may, in its discretion, grant

probate thereof, admit the testimony of other witnesses to prove the sanity of the testator and the execution of the will, and, as evidence of the execution of the will, may admit proof of the handwriting of the testator, and of the subscribing witnesses."

The statute has provided a special tribunal and conferred upon it original jurisdiction in the probate of wills, and has provided what proof, and the degree thereof, required to establish the validity of the execution of the instrument and the sanity of the testator, and has provided that upon this proof the probate court may admit a will to probate, and declares that "no will shall be effectual to pass either real or personal estate unless it shall have been duly proved and allowed in the probate court." Now, will an instrument which has not been proved, that bears upon its face no evidence whatever of validity, have the effect of a valid instrument duly proved? If so, the law relating to the probate of wills provides for a needless proceeding.

In *Rex v. Inh.*, 4 T. R., 258, Lord Kenyon said: "We cannot receive any other evidence of there being a will in this case than such as would be sufficient in all other cases where titles are derived under a will; and nothing but the probate or letters of administration, with the will annexed, are legal evidence of the will." This language was repeated and approved by the supreme court of the United States in *Armstrong v. Lear*, 12 Wheat., 175–6.

A will, therefore, which has not been admitted to probate is not evidence of title. The reason is, the statute has provided the mode of establishing the validity of the will and the court to determine the same, and until such court has declared it a valid will it is not evidence in favor of the party claiming under it. And these provisions are reasonable, as they provide the mode to establish the authenticity of the instrument and the sanity of the testator, and make the will a matter of public record.

But it is said that the will, if ineffectual to pass the title,

is still sufficient for a title by adverse possession. This is true if her possession has been of such a character as to constitute adverse possession. The only proof upon that point is that of H. H. Pettit, who testifies: "I lived with her on the place since 1861." To constitute adverse possession there must have been open, visible, notorious, exclusive, adverse possession of the premises for ten years before the commencement of the action. At the time of the marriage of the plaintiffs in error in 1861 the common law as to the rights of husband and wife prevailed in this state, except in a few particulars, of which this is not one. At common law, if the wife is seized of an estate in lands the husband, upon the marriage, becomes seized of the freehold *jure uxoris*, and he takes the rents and profits during their joint lives. And where the wife at the time of marriage has an estate for her life, or the life of another person, her husband becomes seized of such estate by right of his wife, and is entitled to the profits during marriage. 2 Kent Com., 134. And the husband upon marriage becomes possessed of the chattels .real of the wife, as leases for years, and the law gives him power without her, to sell, assign, mortgage, or otherwise dispose of the same as he pleases by any act of his in his lifetime. Id. The common law continued in force until 1871, and until that time at least the possession of the wife was the possession of the husband. Here the adverse possession is sought to be set up against the husband; but there is a failure of proof upon that point. Neither does the answer of Eliza Pettit constitute a defense to this action.

The answer purports to set up three defenses: *First,* Adverse possession; *Second,* Record title; *Third,* Another action pending. It does not state an interest by adverse possession, because there are no allegations that the possession was adverse and exclusive. And the statement that she had the legal and equitable title to one undivided third part of the premises, as shown by the records, and that she

has not parted with her interest, nor has the same been determined against her by the decision of any court, is an evasion of the questions at issue. This answer, as shown by the record, was filed after Black had introduced his evidence of title and right of possession. This evidence consisted of the mandate of this court containing the decree for the sale of the land for the taxes due thereon, the proceedings in the district court of Cass county by which the sale was effected and confirmed and the deed ordered, and the deed itself, and all this testimony was admitted without objection. Now the land was sold to enforce the lien due for taxes thereon. This lien was not created by the parties, but by operation of law, and it extended to and included every portion of the real estate upon which it operated. The right of a party at most would be to redeem by paying or tendering the amount due, and thus releasing the land from the operation of the tax. It is a proceeding *in rem*, the recovery being limited to the land, and cannot be enforced against the person. Now, is it any answer to this state of facts to say·that she has not parted with the title, or that there has been no adjudication against her? There is no denial of the jurisdiction of the court or of the conclusiveness of the judgment actually rendered, nor is any issue raised upon those questions. And the fact that an action is pending against Black is no defense unless it will defeat his right to the possession. The suit might, for aught that appears, be dismissed the next moment. But suppose the answer did state facts sufficient to show that Mrs. Pettit had an undivided third interest in the premises, would the mere filing of the answer oust the court of jurisdiction? Clearly not; because the answer is a mere statement of the facts which the party filing it expects to prove, but it is not evidence. If, however, on the trial it should appear that the action is not in fact for the recovery of the possession of the premises, but to determine a question of title, the court will have no authority to proceed,

and the case must be dismissed. In other words, where the question to be determined is one of title, it will oust the court of jurisdiction. But the court has authority to proceed with the hearing of the cause until this fact is clearly established.

In the case of *The People v. Nelson*, 13 John., 343, it is said: "Whatever must be proved (to enable the plaintiff to recover) may be disproved, and it follows naturally that though the defendant shall not justify the force by showing a title in himself derived from an independent source, or even from the relator himself, he may controvert the facts by which the relator attempts to make out his estate, and may show that he has not such estate as would enable him to maintain the prosecution." As there was no issue raised upon the title of Black to the land in question, the first assignment of error was not well taken.

The second assignment seems to be based on the first, and is untenable.

The third, fourth, and sixth assignments may be considered together. We find no exceptions taken on behalf of Mrs. Pettit to any of the evidence introduced. The question of error in the admission of evidence is therefore not before the court, and all the evidence offered on her behalf seems to have been admitted.

The fifth assignment is not well taken, as the judgment is sustained by the clear weight of the evidence.

In the discussion of the case we have examined only the rights derived from the sale under the decree for taxes. But it is very clear from the stipulation in the case that additional grounds exist for sustaining the title of Black. It is stipulated that the foreclosure records should be given in evidence, and that orders of sale upon the decrees of foreclosure against Pettit and wife were in the hands of the officer at the time he made the sale in question, and it appears that the court in confirming the sale made the fol-

lowing order: "The balance of the proceeds of said sale, to-wit: the sum of $975.43 over and above the amount applicable upon the claim and judgment of said John Black for taxes; and it appearing to the court that Robert G. Doom and John Fitzgerald are judgment creditors of said Henry H. Pettit, and now have valid and subsisting lien and judgment decrees in foreclosure remaining unsatisfied and in full force upon the records of this court against the identical lands and premises of said Henry H. Pettit, the proceeds of said sale of which are now here reported to the court, and that said sheriff of Cass county had at the date of said sale, and ever since, in his hands valid and lawful orders of sale or execution against the identical lands and premises sold, commanding him to sell said premises to satisfy the said decrees and judgments of said Robert G. Doom and John Fitzgerald, which are valid liens upon said premises," etc.   No complaint is made to any of these liens, and being admitted in evidence by stipulation they were undoubtedly valid.   Now being valid liens, and orders of sale being in the hands of the officer for their enforcement at the time of the sale, it was the duty of the officer to sell under the senior lien, and the proceeds would be applied in the order of priority. *Steele v. Hannah*, 8 Blackf., 326.   *State v. Salyers*, 19 Ind., 432.   *Bagby v. Reeves*, 20 Ala., 427.   *Lawson v. Jordan*, 19 Ark., 297.   *Thompson v. McCordel*, 27 Ga., 273.   *Newton v. Nunnally*, 4 Ga., 356.   And the order of the court making distribution of the proceeds of sale is a protection to the officer, and unless appealed from is final and conclusive upon the parties.   *Noble v. Cope*, 50 Penn. St., 17–20.

Now, when Mrs. Pettit or her attorney stipulates that orders of sale upon the decrees in question to which she was a party were in the hands of the officer, and the record shows that $975.00 of the proceeds of the sale were applied upon those orders by the court, and no appeal is shown to have been taken from such order, it is certainly

conclusive in this collateral proceeding. A sale transfers the entire title to the purchaser. But it is unnecessary to enter into an examination of that question. If there are facts existing which do not appear in this record that would entitle Mrs. Petit to redeem a portion of this land, she has an adequate remedy by bill to redeem by paying or offering to pay the amount justly due. But it is clear that the purchaser is entitled to the possession of the premises, and that there is no error in the record. The judgment is therefore affirmed.

JUDGMENT AFFIRMED.

LAKE, CH. J., dissented from so much of this opinion as holds that Mrs. Pettit's rights were affected by the sale under the decree in favor of Black, she not being a party to it.