FRANCES WALTON v. HENRY AMBLER ET AL.
SAME v. LEOPOLD DOLL.

[FILED MAY 20, 1890.]

Wills: FAILURE TO PROBATE: PARTITION BY AGREEMENT. In June, 1873, one A, a resident of H. county, Iowa, made a will by which he devised the principal part of his estate to his six married daughters. In July of that year A died, and soon afterwards the will was duly admitted to probate in said H. county. A large part of the estate of the deceased consisted of land which was situated in various counties of Iowa and 120 acres near the city of Omaha, Nebraska. Soon after the probat-

ing of the will said legatees, being anxious for distribution of the estate, empowered certain persons to make a personal examination of each piece of land, including that near Omaha, and to estimate the value thereof. This was done, and afterwards, on the 27th of May, 1874, the parties interested met at a designated place in said H. county and agreed upon a division of the property, except certain bank stock, etc., among themselves. This agreement was duly signed by each and acknowledged, and the property divided according to its terms. At this time the will had not been admitted to probate in Douglas county, Nebraska. In 1887 one B, a daughter of A and legatee under the will, who had signed the aforesaid agreement and received her share as therein agreed upon, caused the will in question to be probated in Douglas county, and brought an action of partition, etc., of the 120 acres of land mentioned. *Held,* That she was concluded by the agreement, and that her right to the land in question was conveyed thereby, notwithstanding the failure to probate the will in Douglas county prior to 1887.

ERROR to the district court for Douglas county. Tried below before WAKELEY, J.

*L. D. Holmes,* for plaintiff in error:

Under sec. 143, ch. 23, Comp. Stats., no will, until probated, can convey property. (*Woodbridge v. Banning,* 14 O. St., 330; *Pettit v. Black,* 13 Neb., 152; *Wilson v. Tappan,* 6 O., 175; *Lessee of Swazey v. Blackman,* 8 Id., 5; *Bailey v. Bailey,* Id., 246; *Dublin v. Chadbourne,* 16 Mass., 442; *Shumway v. Holbrook,* 1 Pick. [Mass.], 114.) Letters testamentary, or of administration, have no extraterritorial force. (Schouler, Ex'rs & Adm'rs, sec. 15, pt. 2, secs. 164–5; *Kerr v. Moon,* 9 Wheat. [U. S.], 565; *Wills v. Cowper,* 2 O., 129–30; *Noonan v. Bradley,* 9 Wall. [U. S.], 394; *Naylor v. Moffat,* 29 Mo., 126.) A court of one state has no right to order sale of land in another. (Schouler, sec. 19; *Boyce v. Grundy,* 9 Pet. [U. S.], 275.) The principle of equitable estoppel does not apply here. (*Rosebrough v. Ansley,* 35 O. St., 107; *Mc-Cracken v. San Francisco,* 16 Cal., 626; *Davis v. Davis,* 26 Id., 41; *Bowman v. Cudworth,* 31 Id., 153; *Dolague v.*

*Cress*, 71 Ill., 380; *Morgan v. R. Co.*, 96 U. S., 716; Bigelow, Estoppel, secs. 543–4, 608, and cases; Herman, Estoppel, secs. 752, 754, 947–8–9, 957.)

*Cowin & McHugh*, and *W. I. Babb*, *contra:*

The will, and not the probate, is the foundation of title. On probating the will, it relates back to the testator's death, and confirms the subsequent acts of those acting under it. (1 Williams, Ex'rs, 158–65; Schouler, Ex'rs, sec. 58; 1 Jarman, Wills, 31; *Fleeger v. Poole*, 1 McLean [U. S.], 189; *Poole v. Fleeger*, 11 Pet. [U. S.], 210–11; *Richards v. Pierce*, 44 Mich., 444; *Spring v. Parkman*, 12 Me., 127; *DeWolf v. Brown*, 15 Pick. [Mass.], 462; *Otto v. Doty*, 61 Ia., 23; *Olleman v. Kelgore*, 52 Id., 38; *Carpenter v. Denoon*, 29 O. St., 329; 3 Washburn, R. P. [4th Ed.], 308.) As to the doctrine of estoppel: *Roundtree v. Denson*, 59 Wis., 530; Pomeroy, Eq. Jur., sec. 658, N. 2; *Wilson v. Bigger*, 7 W. & S. [Pa.], 111; *Smith v. Warden*, 19 Pa. St., 425; *Maple v. Kussart*, 53 Id., 348; *Adlum v. Yard*, 1 Rawle [Pa.], 162; *Page v. McKee*, 3 Bush. [Ky.], 135; *Drexel v. Berney*, 35 Fed. Rep., 805 [122 U. S., 241]; Rorer, Judicial Sales, pp. 164–7; *Burnley v. Stevenson*, 24 O. St., 474 [15 Am. Rep., 621]; *In re Place*, 1 Redfield [N. Y. Surrogate's Rep.], 276; *Favill v. Roberts*, 50 N. Y., 222; *Gillespie v. Sawyer*, 15 Neb., 536; *Penn v. Heisey*, 19 Ill., 395; *Davidson v. Young*, 38 Id., 145; *Walker v. Mulvean*, 76 Id., 18; *Corwin v. Shoup*, Id., 246; *Gatlin v. Rodman*, 6 Ind., 289; *Morris v. Stewart*, 14 Id., 334; *Van Rensselaer v. Kerney*, 11 How. [U. S.], 298, and cases; *French v. Spencer*, 21 Id., 228; *Reynolds v. Cook*, 83 Va., 817, and cases.

MAXWELL, J.

This action was brought by the plaintiff against the defendants for partition, and to confirm her title to one-sixth

part of one hundred and twenty acres of land which formerly adjoined but now is a part of the city of Omaha. On the trial of the cause the court found the issues in favor of the defendants and dismissed the action. The testimony shows that on July 16, 1873, Daniel Phillips, the father of the plaintiff, being then a resident of Mt. Pleasant, Henry county, Iowa, died, leaving a last will and testament, as follows :

" I, Daniel Phillips, being of advanced age and weak of body, but of sound and disposing mind and memory, and considering the uncertainty of my present life being much prolonged, do make and publish this my last will and testament as follows :

" Item 1st. I give and bequeath to my widow, Nancy Phillips, the sum of $350 a year as long as she shall live, as in accordance with an ante-nuptial contract or agreement existing between myself and her, and which sum is to be paid in semi-annual payments of $175 each, payable in the two months of January and July of each year as long as she lives, and to be payable out of dividends of bank stock hereafter provided.   The said annual allowance is in full and in lieu of all demands by contracts, and as heir or as widow, and of all dower, homestead, or other interest of her in or growing out of my estate, real or personal, in any manner in my estate.

" Item 2d. It is my will that, as soon after my death as conveniently can be or may be, all sums not herein remitted, or hereby bequeathed, due or owing to me in any manner, be collected by my executors, and from the money on hand and said collection (from said fund) there be paid :

"1st. To my daughter Louisa P. Ambler the sum of $400, making $6,000.

" 2d. To my daughter Catherine Beard the sum of $4,000, making $6,000.

" 3d. To my daughter Miranda McClary the sum of

$2,000, making $6,000 ($1,000 of which $2,000 I design to be paid this summer).

"4th. To my daughter Frances Walton the sum of $1,000, making $6,000.

"5th. To my daughter Areta Depew the sum of $3,200, making the amount of $6,000.

"6th. To my daughter Mary Hoover the sum of $1,900, making $6,000.

"Item 3d. I give and bequeath to my granddaughter Penelope E. Ambler $2,500, to be arranged by Henry Ambler, and to her satisfaction, both as to its time and manner of payment.

"2d. I give and bequeath to my grandchildren Harry Beard and Minnie Beard the sum of $1,000 each, to be paid to them on their arriving at majority respectively, the interest accruing thereon in the meantime to be paid to my daughter Catherine Beard, in addition to the other bequests to her herein provided for.

"Item 4th. (As to my real estate.) 1st. I give and devise to my granddaughters Irene Lehmer and Fannie Clementine McClure the following real estate situated in Madison county, Iowa, viz.: The N. E. quarter of the N. W. quarter of section 28, in township 74 N., of range 26 west, 40 acres.

. "2d. The balance of my real estate, all and singular, I give and devise as follows: To be placed in the hands of my executors, they to take charge of and dispose of and convey as to them may seem best, and the proceeds thereof, after paying all just and reasonable expenses and charges growing out of the management and disposition thereof, is from time to time to be distributed by them among my said six daughters, Louisa P. Ambler, Catherine Beard, Marinda McClary, Frances Walton, Areta Depew, and Mary Hoover equally [subject, however, to the provisions in this will relating thereto], said funds to be distributed semi-annually, or as often as funds arising from sales of said lands may accumulate.

" 3d. If at the expiration of four years any part of the said real estate remain unsold, the part so remaining shall be subject to distribution, the same as said funds would be distributed arising from the sale and as hereinafter provided.

" Item 5th. It is my will that the stock which I may have at the time of my death in the First National Bank of Mt. Pleasant, Iowa, together with the surplus or other interest that is or may be attached thereto, be and remain undistributed until the expiration of its present charter or articles of association until it is wound up, and in the meantime to be subject to the management of my executors who shall represent it, and from the dividend they shall pay:

"1st. The semi-annual payments in the will provided to be paid to my widow.

" 2d. To pay all taxes existing against any part of my estate remaining undisturbed.

" 3d. The remainder is to be [divided and] distributed the same as the fund arising from the sale of my real estate is under this will to be distributed, and the fund arising out of the winding up of said bank and coming to my estate is to be distributed in like manner.

" Item 6th. Any such legatee or devisee dying leaving no living issue, the undisposed of part [distributed or undistributed, arising from either the real or personal property, or stock or any source] that has come or would have come to such person so dying, under this will, shall go to the sisters (my daughters) remaining and to their issue if dead, respectively, and be as to such part of said person share remaining in her hands or undistributed as if such person so dying without issue had not been living or named in this will and as if her share had been divided among the other sisters.   Should the legatee or devisee dying leave issue, the undisposed of balance received and still held by the mother at the time of her death, together with her undistributed part, shall, if undisposed, go to her issue.

But should all of such issue die without issue, then what they took, as far as it remains unconsumed, shall go as it would have gone had their mother died without issue [and the number of said six been so reduced and amount coming to them respectively correspondingly increased]. But the foregoing item 6 does not apply to the bequests to my granddaughters made in this will.

"Item 7th. After paying the said sum to my widow as hereinbefore provided, and the specific legacies and bequests and devise in this will and as provided therein, the proceeds of the entire remainder of my real estate and personal, and any undistributed remainder (existing remainder) at the time of winding up my estate, whether real or personal, or both, is to go to my said daughters, as and according to the terms of this will and according to the aforesaid rule of distribution and descent.

" Item 8th. All sums heretofore given by me by way of advancement or received by my said daughters or by their husbands from me in any manner, and all demands against these daughters or their husbands or any of them, whether by note or otherwise, and all contracts or agreements by which any demand against them by me or my estate might arise, and any demands which I may have lifted for any of them are hereby canceled and to be held for naught and to be delivered up to them respectively, the same having been taken into consideration by me in fixing the respective allowances, and are fully discharged.    And all notes in their hands are hereby released to them respectively.

"Item 9th. I do hereby constitute and appoint Henry Ambler and John B. Lash executors of this my last will and testament and of my estate, and they are hereby authorized to settle and adjust all matters connected therewith, and also to do all things in this will provided to be done by my executors, and to pay over and distribute as in this will provided without any order of court for so doing, taking the receipts from time to time and the final release

of the respective parties and legatees and devisees, and to make settlement with them when the same can be done and to make all conveyances herein contemplated and without requiring any order of sale or distribution (there being no debts that would interfere therewith). Or they may apply to the court for any order, judgment, or decree that may be necessary to carry out the provisions of this will according to its true meaning and intent, or in settling up the estate, and directing them also to pay to Asbury M. E. church for me and my widow $6.25 per quarter for two years, in all $50, to be paid during the two years.

"In witness whereof, I, Daniel Phillips, have signed this my last will and testament, as such and in presence of the witnesses by me chosen,. and have requested them to sign the same as witnesses in my presence and at my request, this 12th day of June, in the year of our Lord one thousand eight hundred and seventy-three."

In October, 1873, this will was duly admitted to probate in Henry county, Iowa, and in February, 1874, the executors named in the will qualified as such and filed in said probate court a full and complete inventory of all of said estate, including the land in controversy. The plaintiff seems to have been very desirous to obtain the homestead of the deceased in Mt. Pleasant, Iowa, as a portion of her share of the estate. Soon after the death of her father it was therefore agreed between herself and her sisters and their husbands that she should have the homestead at $5,000, which sum was to draw interest at six per cent until distribution of the estate, as a part of her distributive share under the will. The agreement in full is as follows:

"Mrs. Frances Walton offers for the homestead place, block 3, Com. 2d addition to Mt. Pleasant, Henry county, Iowa, being former residence block of Daniel Phillips, deceased, five thousand dollars, to draw six per cent per annum from date until paid, and the executors, deeming said offer reasonable, accept the same; and inasmuch as the

will of Daniel Phillps, deceased, is not yet proven, the agreement is that deed is not to be made till after proof of will, and this contract is subject to such proof and to their qualification as executors. When said will is proven and they qualified to act they will make deed and she to execute notes, payable out of dividends, any amounts (not bank dividends) coming to her from said estate, from time to time as they would otherwise become due [not, however, to affect the $1,000 coming to her as a specific legacy; that is not to apply on the purchase]. She is to pay taxes from this date. And this agreement is, as far as the executors are concerned, temporary and depending on their being empowered as executors; in all other respects it is of full force and binding between the parties. [And should, in the opinion of the executors, there being sufficient to fully pay out, they will not apply the whole comings at each time, but allow her one-sixth of what is otherwise coming, and apply five-sixths if she desires.]    FRANCES WALTON.

"August 29, 1873.    (Signed)    HENRY AMBLER.
"JOHN B. LASH."

In pursuance of this agreement she took possession of the homestead in August, 1873, and afterwards, in March, 1874, the property was conveyed to her by deed. Soon after the making and filing of the inventory by the executors all the legatees seem to have been anxious for distribution of the estate, and, as a large part of it consisted of real estate scattered over a considerable extent of territory, it was agreed that the executors, together with a Mr. Depew, husband of a sister of the plaintiff, and a legatee, and a Mr. Hoover, the husband of another of the plaintiff's sisters, and also a legatee under the will, should personally visit each tract of land belonging to the estate and place an estimate of value thereon. This was done, the object being to make an early distribution of the estate.

On May 27, 1874, a meeting of the legatees was had, at which all, including the plaintiff, were present except

two, who were each represented by an attorney in fact. An agreement was entered into by which the five legatees, other than the plaintiff, were to purchase certain real estate, devised under the will, including the land in controversy, for the sum of $4,406 each, making an aggregate of $22,030, and each was also to receive certain notes belonging to said estate of Phillips to the amount of $819, making in all for each of said five legatees the sum of $5,225, being the equivalent of the value of the homestead assigned to the plaintiff, with interest to the time of the meeting. The agreement entered into at that time is in writing, and duly signed and acknowledged by the parties thereto, and is as follows :

" In the matter of the estate of Daniel Phillips, deceased, the executors having offered the lands and lots embraced in the following division thereof for $22,030:

"We, Louisa P. Ambler, Miranda McClary, Catherine Beard, Areta Depew, and Mary Hover accept the said offer, and said five agree to be chargeable in our respective interest in said estate therefor with $4,406 each, making said sum of $22,030, and we make the following disposition of said real estate so acquired and bought by us:

"Each of said five shall hold in the 120 acres (adjoining the poor farm) in Douglas Co., Nebraska, being W. $\frac{1}{2}$ of S. E. $\frac{1}{4}$ of sec. 29, and the E. $\frac{1}{2}$ of S. W. $\frac{1}{4}$ sec. 29, T. 15, R. 13, the undivided one-fifth. And a like undivided share each in the S. E. $\frac{1}{4}$ of sec. 22, T. 15, R. 12, in said Douglas Co., 160 acres. And said Louisa, Marinda, and Catherine take jointly the following (each of said three the und. $\frac{1}{3}$ of S. $\frac{1}{2}$ N. E. and N. $\frac{1}{2}$ S. E. and S. W. of S. E. sec. 22, T. 83, R. 29, being 200 acres in Green county, Iowa, and lot 2 and proceeds of lot 1 in block 25, and lots 5, 6, 7 in block 12, Mt. Pleasant, Henry county, Iowa [Catherine having previously taken said lot 1 at $700, she to account to Louisa and Marinda for $\frac{2}{3}$ of said sum], and the 20 acres at the mouth of Saunders' Branch, Centre Tp., Henry county,

Iowa, known as S. mid. part of S. E. $\frac{1}{4}$ of S. W. $\frac{1}{4}$, of sec. 17, and the N. $\frac{1}{2}$ S. E. and S. $\frac{1}{2}$ N. E. of sec. 31, T. 76, R. 2, Muscatine Co., Iowa, making 160 acres in said county (on the island); and lot 6, sec. 30 (55 acres) and the W. $\frac{1}{2}$ of N. W. of N. W. of section 18 (20 acres), and S. W. of N. W. and N. W. of S. W. of section 18 in T. 75, R. 2, Louisa county, Iowa, (on island), making 155 acres in said Louisa Co., and which said tracts taken by said three they are to hold in equal shares.

"And said Areta and Mary take jointly the N. W. $\frac{1}{4}$ of sec. 31, Tp. 76, range 2, 160 acres; N. $\frac{1}{2}$ S. $\frac{1}{4}$ of sec. 31, Tp. 76, Range 2 (80 acres).

"In Muscatine Co., Iowa on the island, and the E. $\frac{3}{4}$ of N. $\frac{1}{2}$ of N. W. $\frac{1}{4}$ of sec. 18, Tp. 75, R. 2, 60 acres in Louisa county, Iowa (on the island), and W. $\frac{1}{2}$ N. E. $\frac{1}{4}$ and E. $\frac{1}{2}$ N. W. and S. W. N. W. $\frac{1}{4}$ sec. 21, Tp. 74, R. 26, 200 acres in Madison Co., Iowa, and N. $\frac{1}{2}$ of W. $\frac{1}{2}$ of the S. W. $\frac{1}{4}$ of sec. 23, Tp. 95, R. 23, 40 acres in Hancock Co., Iowa, and the middle $\frac{1}{3}$ of E. $\frac{1}{2}$ N. E. sec. 2, Tp. 71, range 7, equal to 26 acres in Henry county, Iowa, and which said tracts so taken by said two they are to hold in equal shares, and said lands so purchased as aforesaid (for $22,030) are held as aforesaid as if distributed under the will or sold to said parties respectively according to the foregoing interest; but as if their respective interests were deeded to them respectively by the executors, and their respective interests therein, when held jointly, are to the number and in the amounts or proportions hereinbefore specifically set forth as if sold and distributed in said manner.

"And it is specifically understood and agreed that the taxes on all of the foregoing lands for the year 1874 are to be paid out of the fund arising for such purpose under the will; and also the taxes for the year 1873 on block 3, Com. 2d addition to Mt. Pleasant, bought by Frances Walton; and it is mutually understood and recognized that any demands paid by deceased in First National Bank, Mt.

Pleasant, Iowa, or charged to the estate in said bank since his death on account of H. Hover, are settled and any such demands are his, said Hover's, property; and the Fielder P. Stetson demands, growing out of Indian tract 120 acres, now in Kankakee county, Illinois, formerly in Iroquois county, any interest of deceased in said lands or its proceeds having passed to H. Ambler, under the will (being demands in his hands), growing out of said land is so understood and agreed as belonging to and fully released to said Ambler.

"And as to said lands sold by the executors as aforesaid to said heirs (five of them) for $22,030, each of the heirs releases all interests in said lands except as hereinbefore set forth, and fixing the interests as herein agreed upon. It being agreed also that, as to each other, no claim or demand is to be made against the other, or said lands, for anything growing out of said lands other than to be held and owned in the proportions herein set forth (the same as if sold to them, and the proceeds · distributed); nor any demand growing out of the title thereto or to any of said tracts of land, except this, that if either party, said two or said three, any of said five, wish to sell their interest in said land now held by them jointly in Nebraska, the parties in interest therein shall be notified of such fact, and have the first right to take at as favorable terms as the same will be disposed of and shall have the refusal.

"And we further agree that whereas the sale of said block 3 (sold to Frances) now amounts, with the interest thereon, to $5,225:

"Now, for the purpose of making the parties equal (the six children), there shall be first paid in such demands as may be selected, and a schedule thereof is hereto attached, the amount of unpaid balance of specific legacies under the will, including the grandchildren's legacies, Penelope E. Ambler and Harvey and Minnie Beard, and then $819 to each of the five, Louisa, Marinda, Catherine, Areta, and

Mary, the purchasers of said $22,030 of real estate, so making their respective sums equal, so that all the specific legacies may be receipted for in full, with what has been received by them from the executors, and each of said children shall also receipt for $5,225 to the executors, making said sum (of $819) and said $4,406 to each of said five, and said sale to Frances equal, and the executors are to be allowed such per cent on all of said sales and distributions and collections and disbursements as if the sales were to others, and collected and moneys disbursed, and such allowances as would ordinarily be made in such an estate, when collections, sales, and disbursements to said extent had been made, to the same extent if lands sold, collections made, and moneys distributed.

"And the executors, or either of them, are fully authorized to make any transfer of any of said demands hereinbefore referred to, so as to carry out fully the purport of the foregoing, all, singular, with any and all of said parties referred to, and of any securities accompanying the same. But not so in anywise make the estate liable thereon, but to be without recourse. Each party, or set of parties, where any of them take together, to be in all cases at their own risk, and we ratify anything the executors may do in accordance with this instrument, and we hereby enter our appearance and assent to any order of court or record entry that may be desired by any party hereto or representative of the estate that may be made in pursuance of and in conformity with the foregoing, or that may be desired to carry out any or all of the provisions of the foregoing instrument according to its true meaning and intent.

"And we hereby agree to and do discharge the executors of said estate from any and all liability on account of household goods and furniture and library books left by deceased.

"SAID LIST OF NOTES TAKEN AND BY WHOM.

"By Louisa, Marinda, Catherine, and for the grand-children:

| | | |
|---|---:|---:|
| Three-fifths of Schultz notes, $3,322.50 | $1993 | 50 |
| H. Bratton, two notes | 206 | 40 |
| W. Burns, two notes | 248 | 00 |
| F. White | 483 | 07 |
| A. Goan | 609 | 00 |
| E. L. Penn, two notes | 1659 | 90 |
| Millspaugh & another, three notes | 1159 | 70 |
| J. Eshelman | 1921 | 50 |
| R. Noble | 950 | 00 |
| McAfferty | 596 | 25 |
| To balance | 8 | 20 |
| | $9835 | 52 |

"And coming out of above to grandchildren:

| | | |
|---|---:|---:|
| Balance to Penelope E. Ambler | $1608 | 52 |
| Balance to Harvey and Minnie Beard | 1500 | 00 |
| Amount coming to said three sisters to balance with the land, the amount received by the others, $819 | 2457 | 00 |

"Balance of specific legacies to said three:

| | | |
|---|---:|---:|
| To Louisa | 290 | 00 |
| To Marinda | 990 | 00 |
| To Catherine | 2990 | 00 |
| | $9835 | 52 |

"LIST OF NOTES TAKEN AND BY WHOM.

"By Areta and Mary:

| | | |
|---|---:|---:|
| Two-fifths of Shultz notes, $3,322.50 | $1329 | 00 |
| Note of Joseph Howe and interest | 2826 | 10 |
| Note of B. Kegon and interest | 252 | 68 |
| To R. Noble, less discount | 1000 | 00 |
| To balance | 20 | 22 |
| | $5428 | 00 |

"Amount coming to said two sisters:

To Areta, balance of said specific legacy...........$2400 00
To Mary, balance of specific legacy................. 390 00
To balance amounts received by others, $819..... 16 38 00
                                                   _____
                                                   $5428 00

To Frances, $740 out of Ketcham note............ $829 75
To pay out to balance................................. 89 75
                                                   _____
                                                   $740 00

To Frances, balance of her specific legacy........ $740 00

"Property never having passed into the hands of the executors. To all of which we hereby bind ourselves May 27, 1874.

" LOUISA P. AMBLER.
" H. AMBLER.
" FRANCES WALTON.
" W. F. WALTON.
"ARETA DEPEW.
" J. F. DEPEW.
" MARY HOVER.
" H. S. HOVER.
" MARINDA McCLARY,
" CATHERINE BEARD,
" JAMES A. BEARD,
    " By H. AMBLER,

" *Their Attorney in Fact thereunto duly authorized.*

"STATE OF IOWA, } ss.
" HENRY COUNTY. }

"Before me, the undersigned, a notary public in and for said county and state, personally appeared Louisa P. Ambler and Henry Ambler, her husband, Frances Walton and W. F. Walton, her husband, Areta Depew and J. F. Depew, her husband, and Mary Hover and H. S. Hover, her husband, who are personally known to me to be the identical persons who executed the foregoing instrument as grantors, and each and every one of them acknowledged the same to be their voluntary act and deed.

" Witness my hand and notarial seal this 28th day of May, 1874.

    " [SEAL.]                R. AMBLER,
                                    "*Notary Public.*

" STATE OF IOWA, } ss.
" HENRY COUNTY. }

" Before me, the undersigned, a notary public in and for said county, personally appeared H. Ambler, attorney in fact of Marinda McClary, Catherine Beard, and James A. Beard, parties to the foregoing instrument, and the identical person (H. Ambler) who signed said instrument for said Marinda and Catherine and James A. Beard as attorney for them, and acknowledged the same to be the voluntary act and deed of said Marinda McClary, Catherine Beard, and James A. Beard, by him as their attorney thereunto appointed, voluntarily done and executed this 28th day of May, 1874.

" Witness my hand and notarial seal.

    " [SEAL.]                R. AMBLER,
                                   " *Notary Public.*

"Entered on numerical index and recorded April 18, A. D. 1888, at 10 o'clock A. M.    T. H. MEGEATH,
                              " *Register of Deeds.*"

There is also a statement of account of the executors showing the plaintiffs at that time to have been entitled to $740 additional to the $5,250.   On the same day on which the agreement was signed and acknowledged the plaintiff executed a receipt as follows:

    "ESTATE OF DANIEL PHILLIPS, DECEASED.

" Received of Henry Ambler and John B. Lash, executors under the will of Daniel Phillips, deceased, the sum of $740, which, with the amount heretofore received by me from the executors ($260), is in full of the specific legacy coming to me under the will of the deceased and making the amount thereof $1,000 in full.

"And also received from said executors $5,225 over and above my specific legacy this 27th day of May, 1874.

"Frank Walton."

And afterwards she executed the following receipt:

"Received, Mt. Pleasant, Iowa, Jan. 4, 1884, of M. L. Andrews, clerk circuit court of Henry county, Iowa, deed of executors of estate of Daniel Phillips, deceased, for my distributive share, being und. one-sixth of undistributed land remaining, being for my share under order of court; also check for five and $\frac{77}{100}$ dollars under said order, being my distributive share.        Frances Walton."

All of the foregoing contracts and arrangements of the parties were fully approved by the circuit court of Henry county, Iowa, which seems to have been clothed with the powers of a probate court, and conveyances made in conformity to the contracts and the estate fully settled, except as to certain bank stock, etc., and the executors discharged.

We have thus set out the essential facts showing an agreement to divide the estate, except as above stated, and that the agreement was carried into effect by conveyances duly executed.   The plaintiff contends that the note for $5,000 for the homestead, executed by her in 1873, has never been surrendered to her, and that, therefore, she is still indebted to the estate for that sum, and consequently as to her there has been no distribution.   The answer is that whether the note was surrendered or not it was paid in full by the distribution agreed upon May 27, 1874, and then carried out, and as it appears to have then been in the hands of the executors and then due they could not, had they been so disposed, have transferred it to a *bona fide* purchaser.   But there is no proof that they attempted, or even thought of making such transfer, and it is evident that it is satisfied and discharged.   There are other claims made on behalf of the plaintiff which have no better

foundation to rest upon than that in relation to the note, that need not be noticed at length.

The principal ground upon which the plaintiff bases her claim for relief is that the will of Daniel Phillips was not admitted to probate in Douglas county, Nebraska, until September, 1887, and it is claimed on her behalf that no title passed to real estate in this state or in fact could pass by a conveyance from her until such will was probated. *Petit v. Black*, 13 Neb., 142, is cited to sustain that view. In that case it was held that a will was not admissible as evidence of title to real estate until it had been admitted to probate.   The probate of a will is simply proving the instrument purporting to be a will to have been signed by the testator in the presence of the requisite number of persons, who at his request signed the same as witnesses, and that the testator at the time of signing the will was of sound mind.   If there is no contest and the signature and sanity of the testator are proved, the order admitting the will to probate follows as a matter of course.   If either of these is contested, the court renders judgment according as it may find the weight of testimony to be. In the case at bar the will had been admitted to probate in Henry county, Iowa, and all parties are claiming under the will.   Sec. 144 of chap. 23, Compiled Statutes provides :

"All wills which shall have been duly proved and allowed in any of the United States, or in any foreign country or state, according to the laws of such state or country, may be allowed, filed, and recorded in the probate court of any county in which the testator shall have real and personal estate on which such will may operate, in the manner mentioned in the following sections :

"Sec. 145. When a copy of such will and the probate thereof, duly authenticated, shall be produced by the executor, or other person interested in such will, to the probate court, such court shall appoint a time and place of

hearing, and notice shall be given in the same manner as in case of an original will presented for probate.

"Sec. 146. If, on hearing the case, it shall appear to the court that the instrument ought to be allowed in this state as the last will and testament of the deceased, the copy shall be filed and recorded, and the will shall have the same force and effect as if it had originally been proved and allowed in the same court ; *Provided,* That all decrees heretofore made in this state allowing wills and admitting the same to probate, under the provisions of this and the two preceding sections, without the previous filing of the copy of the probate mentioned in section 145 of this chapter shall be as legal and valid and shall have the same force and effect as if such copy had been duly filed prior to the making of such decree and the allowing of such will."

It is unnecessary in this connection to enter into a general discussion of the effect of the probate or want of it of a will. In order to show evidence of title in the legatees it was necessary that the will be admitted to probate in Douglas county, but the want of such probate would not preclude the plaintiff from selling or bartering all her interest in the estate. This she did, and thereby became divested of all her right and title in the land in controversy. The judgment of the court below is therefore right and is

AFFIRMED.

THE other judges concur.