OLDS v. CONGER.

[*Opinion Filed Jan. 27, 1893.*]

1. FORCIBLE DETAINER—*When it Lies*—The plaintiff claimed, and introduced evidence tending to show that he was the owner of the property in question, and entitled to the possession, and that he let the same to the defendant for three months for the sum of $60, and that, after the expiration of the term, he paid an additional sum of $5, and subsequently refused to sign another lease, pay more rent or recognize the plaintiff as his landlord, or surrender possession of the leased premises. *Held,* that an action of forcible detainer would lie for restitution of the premises.

2. FORCIBLE DETAINER--*What Involved*—In an action of forcible detainer the title to the property is not, and cannot be, tried and determined. The right of possession is the only right involved.

3. DESCRIPTION OF PREMISES—*Slight Error*—Substantial accuracy in the description of the premises, in an action of forcible detainer, is all that the law requires. A slight error which does not mislead the defendant will not be regarded.

4. CLAIM OF LESSEE—*When He May Make*—To enable a lessee to set up a claim to the leased premises, which is adverse to the lessor, he must first surrender to the lessor the possession obtained under the lease, and, then, assert his right in a proper action.

*Appeal from the District Court of Logan County,
Hon. E. B. Green, Judge.*

*McKennon, & Elkins and Harper S. Cunningham,* for Appellant.

*Brown & Soward,* for Appellee.

The opinion of the court was delivered by.

CLARK, J.   This is an action of forcible detainer,

commenced on the 19th day of June, 1890, in a justice's court in Logan county, in the First district, where judgment was rendered against the defendant, from which he appealed to the district court. In the district court of said county by agreement of parties, a jury was waived and the case was tried by the court, and a judgment in words and figures following, was rendered:

"It is therefore considered, ordered and adjudged by the court, that the plaintiff recover from said defendant the possession of lot sixteen (16), in block forty-five (45), the tract of land in controversy, and further that the plaintiff recover from said defendant all plaintiff's costs in his behalf expended."

From that judgment the defendant, H. C. Olds, appealed to this court, and assigns ten causes for reversal, in substances as follows, to-wit:

1. The decision of the court is contrary to law.

2. The decision of the court is not sustained by sufficient evidence.

3. The court erred in admitting in evidence a copy of the lease from Hamilton S. Wicks to H. C. Olds.

4. The court erred in admitting in evidence the testimony of John C. Wicks, showing that the name of H. S. Wicks was inserted in the lease by mistake.

5. The court erred in admitting in evidence the deed from H. S. Wicks to W. B. Conger.

6. This is the same in substance as the fifth.

7. The court erred in admitting in evidence a copy of the notice to quit, dated January 25, 1890.

8. This, in substance, is the same as the third.

9. This is the same in substance as the fourth.

10. The court erred in overruling the objection of the defendant to the testimony of John C. Wicks, tending to show that W. B. Conger was the owner of the lot in controversy, and that H. S. Wicks had formerly been the owner.

The plaintiff claimed, and introduced testimony tend-ing to show, that he was the owner of the property in question and entitled to the possession thereof, and that he leased the same to the defendant for a term of three months for the sum of $60, and that after the expiration of said lease he paid an additional sum of $5, and that he subsequently refused to sign another lease, pay any more rent, or recognize the plaintiff as his landlord, or surrender the possession of the property.

The defendant admitted in his testimony that he leased the property and went into possession of the lot in dispute about the 7th of October, 1889, and that he paid for the rent of said premises until the 7th of Janu-ary, 1890, the sum of $60, and that the rent had been paid to John Wicks, and that after the expiration of the lease he had paid $5 additional rent to Hamilton S. Wicks. He admitted that he went into possession as a tenant of Hamilton S. Wicks, but denied that he had been or was a tenant of W. B. Conger.

The defendant also claimed that at the time he paid the said sum of $5, a day or two after his lease expired, he mentioned the fact that his lease had expired to Hamilton S. Wicks, and that Hamilton S. Wicks replied to him, "My brother and I will be at your place in a few days, and we will make a new lease for the premises;" that he had not heard of W. B. Conger, and never had heard of his being interested in the property until the second lease was presented a few days afterwards.

The payment of the money to Hamilton S. Wicks was denied by John Wicks, he, John Wicks, testifying that the money was paid to himself in person as the at-torney of W. B. Conger.

Before considering the sufficiency of the evidence, the admissibility of the evidence should first be deter-mined.

To maintain his allegation that he was entitled to the

possession of the property in question, the plaintiff, W. B. Conger, introduced in evidence the testimony of John C. Wicks, who swore that he leased the property in question on the 7th day of October, 1889, for the term of three months to the defendant, H. C. Olds, and one Harry Bulgen, that the property belonged to W. B. Conger; that the lease was in writing, but that in the hurry he used a form of lease prepared for Hamilton S. Wicks, and it appeared therein by mistake that Hamilton S. Wicks was the owner and lessor, whereas, in fact, the property belonged to W. B. Conger at the time the lease was executed, and that Hamilton S. Wicks had sold it to him. The witness further swore that the original lease had been used in evidence before the townsite board, and had been lost and could not be found. He introduced in evidence what he swore was a copy, with the exception of names and date, which, when filled up, would make it read as follows:

"This indenture made this 7th day of October, 1889, by and between Hamilton S. Wicks, lessor, and H. C. Olds and Harry Bulgen, lessees, all of the town of Guthrie, Indian Territory,

"Witnesseth, That for and in consideration of the sum of $20 to be paid monthly in advance, by the said lessees the following described property to-wit: The one-story frame building formerly known as the "Cozy Restaurant," and occupied as a restaurant, situated on Lot sixteen (16), Block forty-five (45), fronting on Oklahoma Avenue.

"It is hereby further agreed that the terms of this lease are for three months from the 7th day of October, 1889, and the said lessees will vacate the said building and lot on which it stands at the expiration of the term of this lease unless renewed in writing on the back of this lease.

"It is further agreed and understood by and between the parties hereto, that the lessees claim no title and will claim no title to the building or lot on which it stands, and that all improvements made on or to the

said building shall belong to the said lessor and no claim shall be made to them by the said lessees.

In witness whereof, we affix our hands and seals.

HAMILTON S. WICKS,
by John C. Wicks his Atty.
H. C. OLDS,
HARRY BULGEN."

To the introduction of the copy in evidence, and the testimony of John C. Wicks, that a mistake was made, in the contract, and to the introduction of oral testi- mony, tending to show that the plaintiff was the owner of the property, and entitled to the possession thereof, the defendant objected. These questions cover the third, fourth, eigh h nl niohth assignments of error. In connection therewith, it would be well to consider the fifth, sixth and tenth assignments of error, to-wit: That the court erred in admitting in evidence the deed from H. S. Wicks to W. B. Conger, and admitting in evidence the testimony of John C. Wicks tending to show that the plaintiff was the owner of the lot in ques- tion.

The deed from Hamilton S. Wicks to W. B. Conger of the premises in question, bore date on the 15th day of June, 1889, and purported to convey and quitclaim to said Conger, for the consideration of $1,700, said premises and to have been executed before James G. Young, a Notary Public of Jackson county, Missouri. Attached to the Notary's certificate are the following words:

"Mv commisson or term of office expired on the 3d day of June, A. D., 1889."

In this class of action only the right of possession can be tried and not the title to the premises.

Deeds may be received in evidence, not for the pur- pose of proving title, but to establish the right of po- session. (13 Neb. 142. 17 Neb. 187.) That was all the purpose for which the deeds in question could be

used. It tended to show that the plaintiff was the assignee of Hamilton S Wicks, and entitled to all the rights of said Wicks. The defendant objected to the admission of evidence of said deed because the execution had not been properly acknowledged. The defendant does not claim to be the owner of the property. He admits that he went into posession as a tenant, not of the plaintiff, but as a tenant of Hamilton S. Wicks, and admits that his term had expired. A defective acknowledgment did not effect him or his rights. He was not a purchaser for a valuable consideration. He must have been such to question the validity of the certificate of acknowledgment. As between the parties, the signing, sealing in the presence of witnesses and delivering of the deed, conveyed the interest of Hamilton S. Wicks to the plaintiff. At the date of the execution of the deed, June 18, 1889, there was not in force in this territory, any law prescribing that there should be an acknowledgment. By the common law, that was not necessary. As between the parties in interest, the acknowledgment might be treated as surplussage and the deed would be valid. In this action it was admissible in evidence as tending to show that the plaintiff was the assignee of Hamilton S. Wicks and entitled to the possession of the property. 66 Mass. 393. § 6716 of the Statutes reads as follows:

"The legality of the execution acknowledgement, proof, form or record of any conveyance or other instrument made before this chapter goes into effect, executed, acknowledged, proved or recorded is not affectd by anything contained in this chapter, but depends for its validity and legality, except as to seals, upon the laws in force when the acts were performed."

Section 6717 is:

"All conveyances of real property made before this chapter goes into effect and acknowledged or proved according to the laws in force at the time of making

and acknowledgment or proof have the same force as evidence, and may be recorded in the same manner and and with like effect as conveyances executed and acknowledged in pursuance of this chapter."

Prior to May 2, 1890, there was no statute in this Territory on the subject of the execution and acknowledgment of conveyances. Therefore, if executed in accordance with the common law, which did not require an acknowledgment, they have the same force as evidence as a deed executed and acknowledged under the present statute.

That part of the testimony of John C. Wicks wherein he swore that the plaintiff was the owner of the property in question and to which the defendant objects, could not hurt the defendant in the least, except so far as it tended to show that the plaintiff was rightfully entitled to the possession, and that far it was admissible. This was not an action to try title, but right of possession, and the testimony could not reach further than that. Oral testimony is always admissible when tending to show right of possession.

It was also assigned as error and argued, that the admission of a copy of the lease in evidence, was error, because the proper ground had not been laid, and because no assignment had been made to the plaintiff; and because it was an attempt to vary the terms of a written instrument by oral testimony. If the original lease was admissible in evidence, the copy was clearly admissible, after the witness, John C. Wicks, testified that the original lease had been used before the townsite board and lost, and that diligent search had been made for it and that it could not be found.

It is conceded by the defendant that he leased the property for the term of three months, at $20.00 per month. That the term expired on the 7th of January, 1890, and that he rented it from John C. Wicks, as

agent. These matters constitute all the essentials of a lease. Is he in a position to take any exception to or question who, in fact, was his lessor? As a tenant, it was his duty to vacate when his term expired. At that time, Hamilton S. Wicks was present in person, and John C. Wicks, acting as the agent for W. B. Conger, and he knew that Hamilton S. Wicks did not claim the property, and that the plaintiff did. He should have then surrendered the possession of the premises to the agent of the plaintiff. He should have lived up to his agreement, wherein he promised not to claim the property, but vacate it at the expiration of his lease. It was not a material question who was his lessor, as he had occupied the premises for the full term of his lease. The deed from Hamilton S. Wicks to the plaintiff would take effect at least from the time of delivery and acceptance. It certainly must be construed as delivered and accepted, when the plaintiff or his agent made demand on the defendant for the vacation of the premises. The defendant swears that he never heard of W. B. Conger as his landlord until the presentation of the second lease to him to sign, after the expiration of the term of the written lease, dated October 7, 1890, and after the payment of the $5.00. The testimony shows that this deed was filed for record in the city of Guthrie on the 21st day of June, A. D. 1889, at 11:47 o'clock a. m., and recorded in book 5, page 162. This tended to show that the conveyance of Hamilton S. Wicks to the plaintiff, was notorious, public, and in good faith, whether the defendant ever heard of the plaintiff or not. The law has been clearly stated on the subject of correction of errors in deeds, as follows, by an eminent Illinois judge:

"Error of expression is unessential when there is no error as to the thing referred to. The name is mutable and immaterial; it is the thing intended alone that is

immutable and material, when the operation of a deed or a contract is to be considered. Consequently, a designation of an individual can be corrected by parol, so as to bring out the person intended in the document, and evidence is admissible to show that a grantor, execucuted a deed by other than his real name." (*Nixon v. Cobleigh*, 55 Ill. 387.)

There was no error in the thing referred to, but the position taken is that the agent of the lessor executed the lease in the wrong name, and that the mistake cannot be corrected by parol. Suppose the defendant had attorned to the plaintiff, and that the heirs of Hamilton S. Wicks had brought suit for the possession of the land in question? Could not the defendant have answered that there was a mistake in the lease, and that the plaintiff, Conger, was the real lessor, and proved that fact by parol?

The defendant also argued that the lease having expired, and that having paid thereafter as rent an additional sum, the lease was thereby renewed, subject to the terms and conditions of the former lease, and that he was not liable to be removed as a tenant holding over. Section 1021, on page 983 of the Neb. Statutes then in force in this Territory, is as follows:

"A tenant shall be deemed to be holding over his term whenever he has failed, neglected or refused to pay the rent, or any part thereof, when the same was due."

The testimony, undisputed, shows that a day or two after the lease expired the defendant paid, as rent, the sum of $5.00, and subsequently refused to pay any more rent or to surrender the premises, and did not pay any more. To place himself in the position, he claimed he should have paid $20.00, another month's rent, and repeated the same at the beginning of each month as it came around.

The defendant further objected to the admission in

evidence of a copy of the notice to quit, dated January 25, 1890. Section 1022, on page 984 of the statutes of Nebraska, is as follows:

"It shall be the duty of the parties desiring to commence an action under this chapter (Forcible Detainer), to notify the adverse party to leave the premises, for the possession of which the action is about to be brought, which notice shall be served at least three days before commencing the action by leaving a written copy with the defendant, or at his usual place of abode, if he cannot be found."

Two notices to vacate the premises were served on the defendant, one January 25, 1890, and one June 11, 1890, the last at least a week before the action commenced. It does not appear that any attempt was made to account for the absence of the original notice, served January 25, 1890; but no exception was taken in the assignment of error to the second notice, served June 11, 1890. The original notice of that date was introduced and proof of service made. The above quotation from the statutes answer the objection that sufficient notice was not given.

It was also assigned as error that the decision of the court was contrary to law. It was argued that the action was to recover the possession of Lot 16, in Block 45, in Guthrie, and that the lease and the oral testimony showed that there was leased to the defendant a one-story building 12x16 or 20 feet, and that there was another building on the same lot, the possession of which was not surrendered to the defendant, and that the evidence was not sufficient to sustain a judgment for the possession of said Lot 16. The lease was made in writing, with a full knowledge of all the facts. It shows that there was leased to the defendant a one-story frame building on said lot 16.

It also shows that the defendant agreed to vacate

said building and the lot on which it stands and also that defendant claimed no title, and agreed to claim no title, to the building or lot on which it stood. John C. Wicks testified that,

"There was an adjoining building that stood partly on the lot and partly on the lot adjoining on the east. The building that adjoins on the east I had my desk in, partly as a protection to the property, and I occupied that desk.     That is where I kept my real estate office."

The defendant testified as follows:

"Q. You may state when you first went into possession of the lot in controversy.     A.     The first of October, 1889.     About the first of October.

"Q. You may state under what conditions you went in.     A. I went in under a lease of the premises."

The testimony is inde 'nite as to when, where and how long the agent of the plaintiff held his office in the building on the line east of the lot, and how large a spot was covered, and whether he held or surrendered the control of that spot of ground at the time of the lease.     The fact that the defendant admitted under oath that he went into possession of the lot, and that afterwards in bad faith, jumped the lot, tends to show that he was at the time suit was commenced in possession of the whole.     The question whether there was a minute portion of that lot held by the agent of the lessor, was raised for the first time in this court.     To make it available here it should have been raised in the court below.

This court held in the case of *Maggie Seeley v. John Q. Adamson*, where the plaintiff commenced an action for the possession of the whole of a quarter section, but it appeared that she had in actual possession a small tract in one corner thereof,

"That what is required is substantial and not technical accuracy.     The law will not regard mistakes which do not mislead the party notified.     Mr. Adamson could not be mislead by the description in this case.     Had he

surrendered the possession of what he held, then Maggie Seeley would have had all that the notice called for. The law does not take notice of such small things."

Had the defendant called the attention of the district court to even this slight error in the description of the premises of which he was in actual possession, if there was any such error, the court would have given it due consideration.

The evidence in this case clearly shows that the plaintiff was entitled to recover. It shows, and is not contradicted, that the defendant leased the premises, and at the expiration of his lease, refused to surrender or vacate the premises, but proposed to hold them and claimed them as his own. To enable him to set up a claim to the property he should first have surrendered to his lessor the actual occupancy and possession of the premises and then commenced proceedings to recover his interest therein, if any. Any other rule would be illegal, inequitable and unjust, and would tend to the production of violence and disorder.

The judgment of the district court should be affirmed with costs.

The judgment is affirmed with costs.

All the Justices concurring.